UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Jessica Benton, Shelby Bryant, Anne Marie Cavanaugh, Alyssa Garrison, and Clare Thomas,<br><br>　　　　　　　Plaintiff(s),<br>　　v.<br><br>City of Seattle,<br>　　　　　　　Defendant(s). | CASE NO. _____<br><br>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS<br><br>JURY DEMAND |

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 1

## I.    INTRODUCTION

Washingtonians are trying to exercise their right to protest in the streets of Seattle to demand an end to police brutality. But the Seattle Police Department, omnipresent at each protest, wields power and pain on the streets by indiscriminately shooting toxic substances in the air, deploying projectiles at departing protesters, and tossing blast balls into close areas of protesters marching. These tactics make safe protest prohibitive: one needs an exceptional amount of protective gear to enjoy that freedom.

In Seattle, the movement against police brutality specifically includes demands of local governments: to defund – by at least 50% - the Seattle Police Department budget; to drop pending charges against protesters arrested in Seattle; and to re-invest in the Black community.[1]

Petitioners Jessica Benton, Shelby Bryant, Anne Marie Cavanaugh, Alyssa Garrison, and Clare Thomas are individuals who were subjected to the unmitigated violence of the Seattle Police Department on July 25, 2020 while exercising their 1ST Amendment rights to protest in support of these community demands on a sunny Saturday afternoon in Seattle.

---

[1] *See e.g.* demands issued by King County Equity Now, a coalition of Black-led community-based organizations https://www.kingcountyequitynow.com/demands; *see also* https://decriminalizeseattle.com/

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 2

Their noxious gases, "blast balls," chemical sprays, and projectile weapons rendered a public street wielded by the community as a protest path into a war zone. Because protestors now must purchase expensive equipment to be assured that they will be able to protest safely, the indiscriminate use of weapons by SPD implicates equal protection.



*Megan Farmer/KUOW: People protesting for racial justice and against police brutality run from Seattle Police officers deploying flash bang grenades, rubber bullets and balls, as well as chemical agents on Saturday, July 25, 2020, at Seattle Central Colle in Seattle.*

Only those who have the means to purchase extensive protective gear can engage in 1St Amendment speech in the streets of Seattle, where its police force is not a source of protection but of antagonism for protesters.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 3



*Megan Farmer/KUOW: Seattle Police Department officers and SWAT clash with protesters at the intersection of Broadway and East Pine Street following the Youth Liberation Front march in solidarity with Portalnd on Saturday, July 25, 2020 in Seattle.*

Because the Seattle Police Department has acted above and outside the law in dispensing its unbridled force, and the City has failed to prevent same, the government effect is to establish a de facto protest tax: individual protesters subjected to SPD's unabated and indiscriminate violence now must purchase cost-prohibitive gear to withstand munitions – even when peacefully protesting – as a condition to exercising their right to free speech and peaceable assembly.

Earlier in the summer – June 12, 2020 – the District Court for the Western District of Washington enjoined the City of Seattle from "employing chemical irritants or projectiles of any kind against persons peacefully engaging in protests or

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 4

demonstrations." *Black Lives Matter Seattle-King County, et. al., v. City of Seattle*, No. C20-0887RAJ 2020 WL 3128299 (W.D. Wash.), Dkt. #34 at 11, ¶¶ 4-6. "Based on the Court's review, the video and testimonial evidence show that on some occasions the SPD has in fact used less-lethal weapons disproportionately and without provocation." *Id.* at 3, ¶¶ 15-17).

On June 17, 2020, the Court converted its June 12 order into a preliminary injunction in effect through September 30, 2020. *Black Lives Matter Seattle-King County, et. al., v. City of Seattle*, No. C20-0887RAJ 2020 WL 3128299 (W.D. Wash.), Dkt. #42.

Notwithstanding the TRO, the Seattle Police Department continued reacting disproportionately, indiscriminately and with excessive force to protesters on the streets.

As a result, the people of Seattle – through their city council representatives – denounced the practice of SPD by enactment of Ordinance No. 119805, which calls for the cessation in use and possession of 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray.

But that relief would prove short-lived.

The U.S. Government – through its Department of Justice – successfully obtained a temporary restraining order enjoining implementation of Seattle Police Chief Carmen Best's directive to Seattle Police Department officers on July 23,

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 5

2020, which implemented portions of the Seattle City Council's Ordinance No. 119805 banning certain crowd control weapons.[2]

In granting the TRO sought by the DOJ[3], the Court found:

> The court recognizes that preservation of the status quo does not ensure that SPD will refrain from using crowd control tactics that result in deprivations of constitutional rights. *See Black Lives Matter Seattle-King Cty. v. City of Seattle, Seattle Police Dep't*, No. C20-0887RAJ, 2020 WL 3128299, at *4 (W.D. Wash. June 12, 2020) (finding that the SPD's use of force in response to recent protests likely violated the Fourth Amendment). However, the procedural and substantive provisions in the Consent Decree are in place to provide the court with mechanisms to monitor SPD's practices and to work in hand with the parties to determine the most effective police practices for SPD. It is not in the public's interest to eschew the protections that the parties and the court have spent nearly a decade fashioning the moment SPD engages in potentially unconstitutional practices. Instead, the court concludes that the public interest weighs in favor of preserving the status quo under the Consent Decree by reviewing SPD's recent practices and the City's recent crowd control proposals with input from all the appropriate stakeholders before determining the correct path forward under the terms of the Consent Decree.

---

[2] The issuing Court classified the TRO as "very temporary" and directed the OPA, OIG and CPC to file briefs with the Court by August 15th, with the city and the DOJ filing responses by August 22. At that point, the Court will then decide what to do about the conflicting policies.

[3] The District Court has oversight due to a federal consent decree. *But see generally Horne v. Flores*, 557 U.S. 433, 448 (2009) (noting comprehensive, long-running institutional consent decrees need to be carefully tailored and limited because they "raise sensitive federalism concerns" that threaten to deprive elected state officials of their ability to implement their own policies).

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 6

Consequently, the Seattle Police Department used and continues to increase its use of munitions while indiscriminately wielding them against individuals exercising their First Amendment rights. This has made it such that Petitioners are unable to exercise their rights because Defendant cannot – or will not – exercise restraint. The increased and indiscriminate use of munitions against protesting civilians by the city's armed police force is an immediate threat to 1st amendment exercise and implicates equal protection in a way that requires immediate action where an ordinary person does not have the ability to protest without a cost and materials barrier of the state's creation.



Megan Farmer/KUOW: *Detonated OC Blast Balls are piled together on the sidewalk near the intersection of East Pine Street and 11th Avenue following the Youth Liberation Front march, in solidarity with Portland, on Saturday, July 25, 2020, in Seattle.*

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 7

To underscore the immediate need for relief: while SPD engages in tactics that dissuade and push out protestors, the Seattle City Council prepares to act related to SPD's budget. Accordingly, more protests and actions are called for, and people are preparing again to be heard.[4]  But the continued misuse of war munitions by SPD against civilians turns the streets – a public forum and site of protest – into a pay-to-protest racket where only a privileged few who are wealthy enough or popular enough to crowdsource funds to purchase gear  akin to that used by the police department they fund can truly be in the streets.

It is chilling to the bone that this quelling is occurring at the hands of SPD – the agency whose very existence is being challenged, its funding debated *this week,* at time when protesters are most desperately in need of enjoying the public fora without time-delays from ordering protective gear, or wholesale denial of participation because of inability to pay.  SPD's flaunting of the law and orders applicable to it at protests converts those protests into a police play pen where dangerous toys are wielded at will against a population questioning the necessity of this force.  It is not hyperbole to note this is the soil in which fascism is tilled: police met out violence and chill speech such that civilians feel they must be outfitted as soldiers before they can exercise speech.

---

[4] https://signup.com/client/invitation2/secure/427018792248618083/true#/invitation

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 8

The purpose and effect of this excessive force described has been to restrict, frustrate, and deter protesters from exercising their rights under the First Amendment to the United States Constitution to peacefully assemble, petition for redress of grievances, exercise freedom of speech, and exercise freedom of the press—and the Fourth Amendment to be free from unwarranted seizures by the government.

On July 27, 2020, the plaintiffs in *Black Lives Matter Seattle-King Cty. v. City of Seattle, Seattle Police Dep't*, No. C20-0887RAJ, 2020 WL 3128299, argued that the City of Seattle was in direct and flagrant violation of the Injunction:

> In many ways, what happened on July 25 was worse than the events that led to the Court's June 12 order. In a vengeful outburst, the SPD deliberately targeted peaceful protesters, medics attending to those protesters, journalists chronicling those protesters, and legal observers sent to ensure those protesters' rights are protected. This conduct is wrong even in the absence of a court order. But here, it is especially troubling given the Court's clear guidance that peaceful protesters must not be targeted, and that projectiles cannot be deployed indiscriminately into the crowd. The City willfully violated the Court's order, and should be held in contempt.  Plaintiffs' proposed order seeks not only to clarify the injunction already in place but also to sanction the City for these blatant violations. The City must be held accountable.

Dkt. 51 at 12, ¶¶11 – 19.

While citizens and community groups try to bring attention to the mis-practices of SPD, the Department continues to wage its own PR initiative detached from reality.[5] Meanwhile, protesters are dubbed agitators, contagions are collateral

---

[5] A local Seattleite put together a helpful video overview of the reactionary tactics of SPD, available [here.](#) After Lorenzo Anderson was shot on the night of Juneteenth, Seattle's police chief Carmen Best and the police union president Mike Solan

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 9

damage, and the Seattle Police Officer's Guild (SPOG) president issues resounding calls to "hold the line" while Mayor Durkan refers to SPD as her "troops"[6] – turning our city into a warzone while gaslighting its inhabitants to believe they are the provocateurs.



Megan Farmer/KUOW: *People protesting for racial justice and against police brutality clash with SPD officers near intersection of Broadway and East Pint Street on July 25, 2020.*

---

immediately spread disinformation claiming that protesters prevented safe access to the victim.  KUOW has since finished a review of the night from videos and dispatch logs, finding that protesters did not prevent any responders from accessing the scene, and that the police did not approach until after the victim was already removed.  Moreover, it was miscommunications on the police side that caused the delay. *See timeline available at*  https://www.youtube.com/watch?v=9uXZwz9qSpg&feature=youtu.be   (this 5 minute clip includes audio and is best reviewed with sound).  Notwithstanding this, after KUOW presented the evidence of miscommunication to Chief Best's communications team, to Seattle Fire, and the police guild, "Best responded that she stands by her comments that protesters prevented police from reaching the dying man."

[6] Shaun Scott, "Durkan, the Seattle police, and the undermining of civil liberties.", July 15, 2029, available at  https://crosscut.com/2020/07/durkan-seattle-police-and-undermining-civil-liberties

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 10

## II.     PARTIES

Each of the Plaintiffs was unable to protest for a period of time for want of additional gear necessitated by SPD's unmitigated and indiscriminate tactics utilized without restraint on July 25, 2020, less than a day after the implementation of a citizen-spurred initiative was halted.

After the Court's TRO in *U.S. v. City of Seattle*, C12-1282LJR, went into effect, halting implementation of Seattle City Ordinance 125315 by rendering void a directive from Chief Best to implement same, Plaintiffs attended a protest where Seattle Police Department officers were present.

Plaintiff Anne Marie Cavanaugh is a Washington resident who attended protest on July 25, 2020. After experiencing the wrath of SPD against protesters writ large at that protest, Plaintiff Cavanaugh needed to adapt her gear. Until she could, she went two days without protesting. *See* Declaration of Anne Marie Cavanaugh

Plaintiff Alyssa Garrison is a Washington resident who attended protest on July 25, 2020 after increasingly acquiring more protective gear for protests throughout the summer. Her gear was insufficient and, after witnessing SPD's violence at the July 25 protest, Plaintiff Garrison had to order a gas mask with a respirator and forego protesting while awaiting its arrival. *See* Declaration of Alyssa Garrison.

Plaintiff Shelby Bryant is a Washington resident who attended protest with Seattle Police Department present on July 25, 2020. After determining it was unsafe

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 11

to protest in light of SPD's tactics without more gear, Plaintiff Bryant ordered a gas mask and missed several days of protesting awaiting its arrival. *See* Declaration of Shelby Bryant.

Plaintiff Clare Thomas is a Washington resident who attended protest with Seattle Police Department present on July 25, 2020. After that protest experience, Plaintiff Thomas had to obtain more protective gear before returning to protest. *See* Declaration of Clare Thomas.

Plaintiff Jessica Benton is a Washington resident who attended protest with Seattle Police Department present on July 25, 2020. She had to leave early when SPD indiscriminately started gassing the crowd, as Plaintiff Benton is asthmatic and did not have a gas mask. Plaintiff would have stayed to continue exercising her 1st Amendment rights but for SPD's violence. *See* Declaration of Jessica Benton.

Defendant the City of Seattle ("City") is a municipality incorporated in the State of Washington.

### III.   BASIS FOR JURISDICTION

This action pertains to a federal question which allows this Court jurisdiction pursuant to 28 U.S.C. § 1331 where Plaintiffs seek to redress the deprivation of rights under the First and Fourth amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983.

Venue is proper in the Western District of Washington as the events giving rise to the claims occurred within this District.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 12

## IV.   FACTUAL ALLEGATIONS

*A. SPD cannot, or will not, exercise restraint in its use of projectiles, chemical irritants, and blast balls.*

The Seattle Police Department continues to operate outside of the law and a system of accountability. Force is being used indiscriminately.[7] Moreover, video from July 25 shows that SPD's use of force was not only indiscriminate but also directed against people who were retreating and posed no threat to SPD officers.[8] Another video shows SPD shooting pepper spray at a man standing at his bike, presenting no danger to the SPD officers.[9] A third video shows an officer spraying a protester with pepper spray as another officer hits him with a baton. When the protester fell to the ground, the SPD officer hit him in the face again with pepper

---

[7] S*ee Black Lives Matter Seattle-King County, et al., v. City of Seattle*, No. C20-0887RAJ (W.D. Wash.), *Declarations in Support of Motion for Contempt,* Dkts. 52 - 75.

[8] *See* MikeBaker (@ByMikeBaker), Twitter (Jul. 25, 2020, 7:27 PM), https://twitter.com/ByMikeBaker/status/1287212851807940608. The video shows SPD launching an incendiary device that appears to strike a woman who was ten to twenty feet behind the line of protesters that SPD was pushing back. *Id*. (0:11-0:19). And as protesters tried to help her, SPD pepper sprayed them, too. SPD continued spraying the protesters as they ran, ignoring their screams of agony and terror. *Id.* (0:25-0:44). SPD then threw a second woman to the ground, slamming her head onto the concrete curb. *Id.* (0:17-0:22). The second woman is also visible at the beginning of this clip, wearing a pink bandana, clearly trying to get to safety, away from SPD. *Id*. (0:01-0:11). Officers showed little regard for the safety of persons injured by their actions. *Id.* (0:27 "there's a person on the ground"; 0:34).

[9] Patrick Malone (@pmalonedc), Twitter (Jul. 25, 2020, 7:29 PM), https://mobile.twitter.com/pmalonedc/status/1287213310505410562.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 13

spray. Then, SPD attacked people trying to help the defenseless protester on the ground, spraying them with pepper spray even as they pull the protester to safety.[10]

> B. As a result of SPD's unmitigated violence, protesters are subjected to a de facto protest tax: to exercise their 1st Amendment rights with respect to police brutality, a protester must be able to withstand military-grade munitions at a short range from a city police force.

Unlike the Seattle Police Department's officers – outfitted in gear funded by taxpayers – most average protest-goers do not have equipment necessary to safely withstand the force utilized by SPD while on the street exercising their 1st Amendment rights.

But outfitting oneself to withstand SPD's tactics is no easy – or cheap – feat. *See* EXHIBIT A, Protective *Gear and Range of Costs; see also* EXHIBIT B, *Photos of Protective Gear*.

Moreover, even protesters with means to buy, borrow, or share resources, the delay such an imposition has on the ability for one to exercise political speech is unduly burdensome and has already harmed Petitioners.

> C. The City's Illegal Actions Caused and Are Causing Injuries to Plaintiffs

Plaintiffs have suffered and will continue to suffer injury as described above unless and until SPD's unlawful conduct is enjoined.

Demonstrations protesting police brutality and the killing of Black people in

---

[10] @daeshikjr, Twitter (Jul. 25, 2020, 11:16 PM), https://twitter.com/daeshikjr/status/1287270463773609987?s=09

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 14

America are planned to continue this week, as the City Council prepares to vote on whether to "defund SPD" via its budgetary decision-making powers.

Without an injunction restraining their unconstitutional use of force, SPD will continue to deploy the same abusive and illegal tactics it has deployed over the last ten days, threatening the constitutional rights and physical safety of Plaintiffs and others who have been, and will continue to be, harmed by SPD's protest response tactics.

*D. The City's Policy, Practice, and Custom*

The violations of Plaintiffs' First and Fourth Amendment and Equal Protection rights are a direct result of the City's policy, practice, and custom of authorizing SPD to use less-lethal weapons to control and suppress protests.

SPD policymakers including Mayor Durkan and Chief Best have acted with deliberate indifference to the constitutional rights of protesters and would-be protesters by authorizing, both explicitly and implicitly, the use of less-lethal force against protesters who do not pose any safety threat; by failing to properly train, supervise, and discipline SPD officers regarding appropriate use of force against protesters; and by failing to rectify the SPD's unconstitutional custom of using less-lethal force to control and suppress demonstrations.

As a direct and proximate result of Defendant's conduct, Plaintiffs were subjected to excessive and unreasonable force and sustained physical injuries as well

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 15

as emotional anguish. Officers indiscriminately pepper-sprayed a peaceful crowd, launched canisters of tear gas, and fired rubber bullets and other munitions.

At all times, the conduct of defendants was in willful, reckless, and callous disregard of Plaintiffs' clearly established rights under federal and state law.

### V. FIRST CAUSE OF ACTION
*Violation of the First Amendment*

The City's policy, practice, and custom of using less-lethal weapons to control and suppress demonstrations has deprived Plaintiffs of their rights under the First Amendment to the United States Constitution, and the chilling effect is stopping Plaintiffs from exercising the First Amendment rights which they had otherwise planned to exercise in the immediate future.

The SPD's use of less-lethal force against protesters can reasonably be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

Indeed, the SPD's use of less-lethal force against protesters has had the purpose and the effect of suppressing large, continuous protests.

The City's policy, practice, and custom of using less-lethal weapons to control and suppress demonstrations is not a reasonable regulation of the time, place, or manner of Plaintiffs' and the Plaintiff Class's First Amendment protected activity.

Upon information and belief, the City's authorization of the use of less-lethal force against protesters was motivated by the viewpoint being expressed by the demonstrators.

The City has acted with deliberate indifference to the First Amendment rights of Plaintiffs.

### VI. SECOND CAUSE OF ACTION
*Violation of the Fourth Amendment*

The use of less-lethal weapons to control and suppress demonstrations in the absence of an immediate safety threat constitutes excessive force in violation of the Fourth Amendment, and the facts here show that the use of excessive force is stopping Plaintiffs from exercising their constitutional rights they otherwise planned to exercise.

The City's policy, practice, and custom of allowing the SPD to deploy less-lethal weapons to control and suppress demonstrations in the absence of an immediate safety threat reflects deliberate indifference to protesters' rights under the Fourth Amendment to be free from excessive force.

### VII. THIRD CAUSE OF ACTION
*Violation of Equal Protection*

The implication of a policy that allows SPD to continue to utilize blast balls, toxic gases, and projectiles is the evisceration of a public forum for individuals for whom participation is contingent upon their financial ability to outfit themselves in gear that will protect them from injury by government actors.

The significance of poverty in an Equal Protection case outside of the criminal law context was first addressed by the Supreme Court in 1966 in *Harper v. Virginia Board of Elections*. 383 U.S. 663 (1966). In *Harper*, Virginia residents challenged the constitutionality of a $1.50 poll tax on Virginia residents, the payment of which was a precondition to voting in state elections. *Id.* At 664 & n. 1. The Court went held that the payment of a fee as a condition of voting in a state election violated the Equal Protection Clause. *Id. Harper* also involved a factor that independently leads to heightened scrutiny, an infringement of a fundamental interest: the right to vote in state elections. *Harper*, 383 U.S. at 670.

Similarly, for individuals who have not been able to timely purchase or are unable to afford protective gear, the implication is for those indigent but should be scrutinized carefully given the fundamental interest in the exercise of First Amendment right to freedom of speech.

The Equal Protection Clause prohibits discrimination by the government that "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." TriHealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783, 788 (6th Cir. 2005).

There is no rational basis for the City's practice – unmitigated – of allowing officers to indiscriminately and with disregard as to impact wield munitions against a populace. This policy shocks the conscience and cannot be justified as relating to any rational basis.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A. An order temporarily restraining the City and all agencies under its direction and from which it has requested assistance with regard to the protests from further violating the First and Fourth Amendment rights of Plaintiffs by ordering cessation in use and possession of 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray.

B. An order preliminarily enjoining the City and all agencies under its direction and from which it has requested assistance with regard to the protests from further violating the First and Fourth Amendment rights of Plaintiffs by ordering cessation in use and possession of 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray.

C. An order permanently enjoining the City and all agencies under its direction and from which it has requested assistance with regard to the protests from further violating the First and Fourth Amendment rights of Plaintiffs by ordering cessation in use and possession of 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray.

D. A declaration that the City has violated the First and Fourth Amendment rights of Plaintiffs by using less-lethal weapons to control and suppress demonstrations.

E. For judgment against the City for Plaintiffs' costs of suit, including Plaintiffs' reasonable attorney fees.

F. For such other relief as the Court may deem just and proper.

J. Talitha Hazelton

**SMITH LAW, LLC**
4301 NE 4th Street, PO Box 2767
Renton, Washington 98059
Phone: (206) 715-4248
Fax: (250) 900-2664
*Attorney for Plaintiffs*

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - 19