# UNITES STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| Jessica Benton, Shelby Bryant, Anne Marie Cavanaugh, Alyssa Garrison, and Clare Thomas,<br>　　　　Plaintiff,<br>　　v.<br><br>City of Seattle,<br>　　　　Defendant. | No. _____<br><br>MOTION FOR TEMPORARY RESTRAINING ORDER[1]<br><br>Oral Argument Requested |

## I.　INTRODUCTION

This is an action to defend the First and Fourth Amendment rights and Equal Protection of peaceful protesters demonstrating against police brutality in Seattle. Without any type of mandated restraint, Seattle Police Department will continue to utilize and deploy munitions against the populace to terrorize

---

[1] On August 3, 2020 at 10:00AM counsel for plaintiffs, J. Talitha Hazelton, conferred with Assistant City Attorney Ghazal Sharifi via telephone number 206-684-8217. Counsel sought to learn if the City would join in or object to the motion for temporary restraining order; Ms. Sharifi responded, "obviously I can't agree to that" and asked counsel to send a copy of the filings once submitted.

MOTION FOR TEMPORARY RESTRAINING ORDER | 1

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

protesters, deter speech, and demoralize a movement. Plaintiffs maintain that because the Seattle Police Department has acted above and outside the law in dispensing its unbridled force and asserts the dereliction of oversight establishes a de facto protest tax: individual protesters subjected to SPD's unabated violence now must purchase cost-prohibitive gear to withstand munitions – even when peacefully protesting.

Irreparable harm will result without a temporary restraining order because the Defendants have shown they are incapable of voluntarily stopping the use of excessive force against protesters that has caused serious injury and risks more. Moreover, SPD's unabated violence has proven to have an actual – not merely speculative – chilling effect on First Amendment rights where citizens must purchase and obtain cost-prohibitive gear to withstand munitions even while protesting peacefully. The proven chilling effect of this threat of violence on First Amendment rights is presumed harmful, and the evidence submitted here meets the standard for temporary relief.

Since May 25, thousands of protesters have taken to the streets of Seattle—a classic public forum—to protest the gross, systemic injustices perpetrated by law enforcement against people of color generally and Black people specifically. On a nightly basis, these protests against police brutality have been met with police brutality. To control and suppress these demonstrations, the Seattle Police

MOTION FOR TEMPORARY RESTRAINING ORDER | 2

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Department ("SPD") has shot protesters with rubber bullets and sprayed them with mace. It has thrown flash-bangs (grenades by any other name) and canisters of chemical agents such as tear gas and pepper spray indiscriminately into crowds to disperse largely peaceful protesters.

Rather than deescalate tensions and respond to the isolated instances in which protesters have threatened public safety with targeted and proportionate force, the Seattle Police Department ("SPD") has used overwhelming and unconstitutional force to disperse peaceful protesters, requiring a wholesale adaptation to what a protester wears to a protest action.

The purpose and effect of this excessive force has been to restrict, frustrate, and deter protesters from exercising their rights under the First and Fourth Amendment to the Constitution: the rights to peaceful assembly, petition for redress of grievances, freedom of speech, freedom of the press, and freedom from excessive force. Even the threat or prospect of the use of chemical agents and other less lethal weapons has the effect of chilling protest.

In effect, the unmitigated use of chemical and projectile weapons by Seattle Police Department imposes a de facto "protest tax" wherein individuals must be able to withstand military-grade munitions in order to effectively exercise political speech in a public forum.

The Court should grant this motion for three reasons.

MOTION FOR TEMPORARY RESTRAINING ORDER | 3

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

First, Plaintiffs are likely to succeed on the merits of their First and Fourth Amendment claims. The City's authorization of the use of less-lethal weapons to control and suppress chills Plaintiffs' right to free speech constitutes retaliation in violation of the First Amendment. The United States Supreme Court has upheld preliminary injunctions based on the First Amendment where police action chills people from exercising their First Amendment rights.

The City's policies and practices have been overbroad and underinclusive: rather than focus on arresting, the SPD has hurled blast balls and canisters of tear gas and pepper spray at entire crowds of peaceful protesters.

The City's actions also violate the Fourth Amendment prohibition on excessive force, and the First Amendment rights at stake strengthen that claim. The City's authorization of the use of less-lethal weapons against protestors as a means of "crowd control," absent any imminent and specific threat to public safety, is inherently excessive, and violates the Fourth Amendment.

Second, Plaintiffs are likely to suffer irreparable harm if an injunction does not issue. It is well-established that the loss of constitutional rights qualifies as irreparable harm, particularly where the First Amendment is concerned. As Plaintiffs' testimonial evidence confirms, the SPD's actions have the effect of blocking demonstrators from fully exercising their First Amendment rights. The

MOTION FOR TEMPORARY RESTRAINING ORDER | 4

**SMITH LAW, LLC**
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

accompanying declarations demonstrate that the City's actions chill Plaintiffs' prospective exercise of their rights.

These tactics also cause irreparable harm under the Fourth Amendment.

Third, the balance of equities and public interest tilt sharply in favor of Plaintiffs because this balance must always be struck in favor of preventing a violation of constitutional rights, especially where the challenged action harms not just the Plaintiffs but many similarly situated people seeking to exercise their First Amendment rights. Rather than develop a narrowly tailored policy to deal with the relatively few disruptive protesters, the City has chosen an overbroad and underinclusive one: punish all protesters with blast balls, tear gas, pepper spray, rubber bullets, and other force, rather than specifically deal with any individual protesters who allegedly caused damage. Whatever interest the City might have in crowd control does not and cannot justify continuing to deploy less-lethal weapons against gassing peaceful protesters. Moreover, an injunction is in the public interest because as Plaintiffs show by way of their declaration, the disruptive nature of this force is to place the onus on the protester to be outfitted to match SPD's unbridled use of force.

Because the City has and continues to pursue a policy of excessive force against peaceful protesters in violation of their First and Fourth Amendment rights, Plaintiffs request that the Court issue an order enjoining the use and

MOTION FOR TEMPORARY RESTRAINING ORDER | 5

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

possession of 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray.

## II.   BACKGROUND

On July 25, 2020, protesters showed up in Seattle to support the demand for racial justice and the continued protest for police accountability.

Although after days on end of being subject to – and witnessing – a city gassed and prodded by its own police force – the residents in Seattle demanded action from their electorate.

At that protest, Plaintiffs and other residents were subjected by SPD to indiscriminate use 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray.

Consequently, the protester Plaintiffs in attendance that day were delayed in returning to protest because of the need to obtain additional protective gear not common to the average household.

## III.   ARGUMENT

A. *Standard for Granting Temporary Relief*

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

MOTION FOR TEMPORARY RESTRAINING ORDER | 6

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Plaintiffs who seek a TRO or preliminary injunction must show: (1) that Plaintiffs are "likely to succeed on the merits," (2) that Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [Plaintiffs'] favor," and 4) "that an injunction is in the public interest." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013) (alteration in original) (quoting *Winter*, 555 U.S. at 20). Although not dispositive by itself, the first of these factors—likelihood of success on the merits—is the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). However, "[h]ow strong a claim on the merits is enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir. 2011) (quoting *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). Thus, while Plaintiff's claims on the merits are extremely strong, temporary relief would be appropriate even if they were less clearly meritorious given how sharply the balance of harms tips in Plaintiffs' favor. *See Shell Offshore*, 709 F.3d at 1291.

   B. *Plaintiffs Are Likely to Succeed on the Merits Because the City's Use of Force Is Unconstitutional.*

   1. The City's Actions Violate the First Amendment

MOTION FOR TEMPORARY RESTRAINING ORDER | 7

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

The First Amendment reflects a "profound national commitment" to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *N. Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The Supreme Court has consistently commented on the central importance of protecting speech on public issues. *See, e.g.*, *Connick v. Myers*, 461 U.S. 138, 145 (1983); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982). To prove a First Amendment retaliation, Plaintiffs must show: (1) they "engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *see also Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006). The United States Supreme Court has upheld preliminary injunctions based on the First Amendment where police action "chill[s] the willingness of people to exercise their First Amendment rights." *Allee v. Medrano*, 416 U.S. 802, 810 (1974).

There is no question that taking to the streets to protest police brutality is at the core of what the First Amendment was designed to protect. Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment. *Edwards v. South Carolina*, 372 U.S. 229 (1963); *Thornhill v. Alabama*, 310 U.S. 88 (1940); *NAACP W. Region v. City of Richmond*, 743 F.2d

MOTION FOR TEMPORARY RESTRAINING ORDER | 8

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

1346 (9th Cir. 1984). The traditional public forum consists of streets, sidewalks, and parks—places that have "immemorially been held in trust for use of the public . . . for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939); *accord United States v. Grace*, 461 U.S. 171, 177 (1983); *Gaudiya Vaishnava Soc'y v. City and Cty. of S. F.*, 952 F.2d 1059, 1065 (9th Cir. 1990). Moreover, "[t]here is a strong First Amendment interest in protecting the right of citizens to gather in traditional public forum locations that are critical to the content of their message, just as there is a strong interest in protecting speakers seeking to reach a particular audience." *Galvin v. Hay*, 374 F.3d 739, 752 (9th Cir. 2004) (holding dispersal of protected First Amendment assembly unconstitutional even though it violated location restriction). Seattle protestors have chosen to protest near the police precinct on Capitol Hill as a part of their message against police brutality.

Criticism of the government is no less protected when it is angry or even inflammatory. *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (Free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.").

The City's deployment of less-lethal weapons as means of crowd control has trampled upon Plaintiffs' First Amendment rights. Night after night since

MOTION FOR TEMPORARY RESTRAINING ORDER | 9

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

May 29, thousands of demonstrators have taken the streets of Seattle to protest against racial injustice and police brutality. They have been met with a level of force unprecedented in our City's history sufficient to deter a person of ordinary firmness from exercising their First Amendment rights. SPD's express purpose has been to "disperse" the protest—i.e., to end it. *Cf. Lacey v. Maricopa Cty.*, 693 F.3d 896, 917 (9th Cir. 2012) ("It is hard to conceive of a more direct assault on the First Amendment than public officials ordering the immediate arrests of their critics.").

Blocking or dispersing a protest "before demonstrators have acted illegally or before the demonstration poses a clear and present danger is presumptively a First Amendment violation." *Collins v. Jordan*, 110 F.3d 1363, 1371( 9th Cir. 1996). (citing *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180-81 (1968).

In *Collins*, the Ninth Circuit rejected San Francisco's attempts to curtail protests—which, like the protests here, were prompted by an incident of racial injustice—given the unique protections afforded to such activity under the First Amendment:

> Demonstrations can be expected when the government acts in highly controversial ways, or other events occur that excite or arouse the passions of the citizenry. The more controversial the occurrence, the more likely people are to demonstrate. Some of these demonstrations may become violent. The courts have held

MOTION FOR TEMPORARY RESTRAINING ORDER | 10

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

> that the proper response to potential and actual violence is for the government to ensure an adequate police presence, and to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure.

*Id*. at 1372 (citations omitted). Rather than "arrest those who actually engage" in violence, the SPD has chosen to suppress the legitimate First Amendment rights of everyone at these protests. That is not permitted under the First Amendment. *Id*. at 1373.

But SPD's excessive force is also ineffective in that it is not targeted at apprehending agitators and lawbreakers. Its indiscriminate use renders it ineffective at detaining individual protesters, and extraordinarily effective at chilling exercise of speech.

Likewise, the second element of the claim is satisfied because there is no question the evidence demonstrates that SPD's use of excessive force has chilled—and will continue to chill— Plaintiffs from engaging in protected speech and from recording SPD's violations of their First Amendment rights. The evidence shows police officers using explosive devices and chemical agents against largely peaceful demonstrators to prevent those demonstrators from exercising their First Amendment rights to speak and assemble.

The evidence in the record also demonstrates Plaintiffs' likelihood of success on the third element of Plaintiffs' First Amendment claim—that the

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

protected activity be a "substantial or motivating factor" in the use of force. The City has been explicit that SPD is authorized to use less-lethal weapons as a form of "crowd control" to control and suppress protests, rather than to address individual conduct that poses a threat to public safety. Although people gather to peacefully protest all the time in Seattle, it is only in response to demonstrations against police brutality that SPD has responded with an overwhelming deployment of less-lethal weapons.

The sheer number of chemical agents that are being indiscriminately thrown at otherwise peaceful protests is objectively unreasonable, suggests that a substantial or motivating purpose of this use of force is to disperse the protesters exercising their First Amendment rights.

The evidence before the Court is more than enough to allow the Court to draw the inference that the real goal of the SPD's use of less-lethal force was, and is, to stop protesters from protesting police brutality.

On this record, the Court should grant a TRO. The Supreme Court has expressly held that, "[w]here, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate." *Allee*, 416 U.S. at 815. Accordingly, the Ninth Circuit has approved injunctive relief where plaintiffs have alleged the existence of a pattern or practice of unlawful official conduct. For example, in *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985), the Ninth Circuit approved

MOTION FOR TEMPORARY RESTRAINING ORDER | 12

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

injunctive relief against warrantless government searches of farmworker housing because "the district court . . . found that the defendants engaged in a standard pattern of officially sanctioned police behavior." *Id*. at 1324; *accord Melendres v. Arpaio*, 695 F.3d 990, 998 (2012).

Plaintiffs have shown an ongoing pattern and practice of police use of SPD excessive force that has been encouraged, tolerated, and ratified by the City. It shows no sign of abating, notwithstanding public opinion, the outcry of local officials, and a clear TRO in federal court while under the oversight of a consent decree. Plaintiffs have a real and immediate fear of being again subjected to police use these weapons in circumstances that do not call for such force and that deter and punish peaceful protesting and harm peaceful protesters. As long as the protests continue, this harmful and unconstitutional pattern will be repeated absent this Court's intervention.

2. The City's Actions Violate the Fourth Amendment

The Fourth Amendment guarantees the right to be free from excessive force. Courts analyze claims of excessive force under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

When the governmental interests at stake are substantial, a greater intrusion upon the Fourth Amendment rights of the person may be justified. Conversely, when the governmental interest is insubstantial, the application of even minimal

MOTION FOR TEMPORARY RESTRAINING ORDER | 13

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

force may be unreasonable. When balancing the degree of force used against the governmental interests, "it is the *need* for force which is at the heart of the *Graham* factors." *Liston v. Cty. of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997)) (emphasis in original) (citation omitted).

Applying these factors, the Ninth Circuit has held that "firing projectiles, including pepperballs, in the direction of individuals suspected of, at most, minor crimes, who posed no threat to the officers or others, and who engaged in only passive resistance," is unreasonable. *Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012) (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1284-95 (9th Cir. 2001)). Likewise, the Ninth Circuit has "rejected the contention that the use of pepper spray is a 'minimal' intrusion, due to the immediacy and 'uncontrollable nature' of the pain involved." *Id*. at 878 (citations omitted); *see also Logan v. City of Pullman*, 392 F. Supp. 2d 1246, 1261 (E.D. Wash. 2005). Thus, the Ninth Circuit has found that the use of pepper spray to disperse protestors can constitute excessive force where it is "unnecessary to subdue, remove, or arrest the protestors," even if protesters failed to heed a police warning. *Young v. Cty. of L.A.*, 655 F.3d 1156, 1167 (9th Cir. 2011) (citation omitted).

The Ninth Circuit has also noted that where the individuals targeted by the police are innocent or at least not engaged in "serious criminal behavior," that "significantly reduce[s] the governmental interest involved." *Nelson* , 685 F.3d at

MOTION FOR TEMPORARY RESTRAINING ORDER | 14

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

80. In *Nelson*, the Ninth Circuit found that "[a]lthough the officers encountered individuals at various points . . . who threw bottles or other debris at them," that did not justify the use of force against Plaintiff or others around him when the officers "did not see anyone in [Plaintiff's] group throwing bottlers or engaging in any other threatening or dangerous behavior." *Id.* The Ninth Circuit held that even if the officers had issued orders to disperse and the plaintiff did not comply immediately, the failure to comply "could only rise to the level of passive resistance," which the Ninth Circuit has held "neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Id.* at 881; *see also Young*, 655 F.3d at 1165-66.

C. *Plaintiffs Will Suffer Irreparable Harm Unless the Court Grants Their Motion*

Peaceful protests in Seattle, the surrounding areas, and across the country continue, and more peaceful protests are planned throughout the week and beyond. Plaintiffs will suffer immediate and irreparable injury if the City is permitted to continue to violate their civil rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (A "colorable First Amendment claim" is

MOTION FOR TEMPORARY RESTRAINING ORDER | 15

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

"irreparable injury sufficient to merit the grant of relief.") (internal quotation marks omitted). Because constitutional violations can often not be adequately remedied through damages, the Ninth Circuit does "not require a strong showing of irreparable harm for constitutional injuries." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).

Irreparable injury has already occurred in the streets of Seattle through interrupted speech, suppressed speech, deterred speech, and both physical and emotional injury caused by excessive force by SPD on peaceful protestors. Peaceful protestors are leaving Seattle demonstrations out of fear for their personal safety and for the physical injuries sustained at the hands of SPD in exercising their First Amendment rights.

    D. *The Balance of Equities and Public Interest Weigh in Favor of an Injunction*

The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Since this case involves a government actor, the balance of equities factor merges with the fourth factor, public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

This balance tilts sharply in Plaintiffs' favor because the balance of equities and public interest always favor "prevent[ing] the violation of a party's

MOTION FOR TEMPORARY RESTRAINING ORDER | 16

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotation marks omitted). "The fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [Plaintiffs'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotation marks omitted). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage Ass'n v. City & Cty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (quoting *Melendres*, 695 F.3d at 1002 (internal quotation marks omitted)).

Plaintiffs have shown irreparable and concrete harm because SPD's actions block their ability to exercise their First Amendments rights and violate their Fourth Amendment freedom from excessive force. By contrast, the relief Plaintiffs seek does little, if any, harm to the City, which can and should pursue less restrictive and more narrowly tailored tactics.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant their request for preliminary relief, and immediately enjoin the City from targeting peaceful protesters with blast balls, and canisters of tear gas and pepper spray.

_____
J. Talitha Hazelton
WSBA NO. | 52460

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664