Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JESSICA BENTON, SHELTY BRYANT,
ANNE MARIE CAVANAUGH, ALYSSA
GARRISON, and CLARE THOMAS,

      Plaintiffs,

  v.

CITY OF SEATTLE,

      Defendant.

No.  2:20-CV-01174 RAJ

THE CITY OF SEATTLE'S RESPONSE
IN OPPOSITION TO PLAINTIFFS'
MOTION FOR ENTRY OF A
TEMPORARY RESTRAINING ORDER

   The City of Seattle ("City") respectfully requests that this Court deny Plaintiffs' Motion for

Entry of a Temporary Restraining Order. In support thereof, the City states the following:

**INTRODUCTION**

   The City shares the goal of maintaining peaceful protests with demonstrators feeling (and

being) safe while demonstrating. However, the City disputes that further injunctive relief is warranted

or necessary to secure this outcome. The fatal flaw in Plaintiffs' Motion for a Temporary Restraining

Order ("TRO") can be found in the third line, where Plaintiffs allege future harms will occur "without

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 1 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

any mandated restraint" on the Seattle Police Department's use of crowd management tools such as blast balls. A court-ordered *"mandated restraint"* already exists, namely an Order entered by this Court mere weeks ago, in response to a different, earlier set of plaintiffs request for injunctive relief *identical to what is sought here,* based on the same precipitating circumstances.[1] In the earlier case, this Court determined the appropriate relief. The requested complete bar on these crowd management tools was denied, and the circumstances for lawful future use of crowd management tools were clearly outlined. *See Black Lives Matter v. City of Seattle,* 20-cv-887 (Dkts. 6-1; 34; 42). There is no factual or legal reason for this Court to second guess its earlier ruling.[2]

Seattle is into its third month of continuous and sustained demonstration events for a variety of causes, including Black Lives Matter and the De-Fund Movement. Most have been peaceful. Many of the Plaintiffs have continuously participated in these demonstration events. Plaintiffs' allegations arise out of their repeated demonstration participation, including on July 25, after the injunction was in place.

It is undisputed that SPD has occasionally used crowd management tools during recent demonstrations when necessary. This Court has *already* evaluated and determined the appropriate balance between the important constitutional rights associated with public demonstrations and the similarly essential need for public safety during those demonstrations. Different plaintiffs making the same claims based on the same factual circumstances cannot result in a different outcome. This is true even with a new equal protection claim raised by these plaintiffs, which is not based, as it must be in order to be legally viable, on state action.

---

[1] SPD policies, as well as its voluntary moratorium on tear gas, also provide protections from improper use of crowd management tools.

[2] Moreover, to do so now would place the City in an untenable position, with one federal judge (Judge Robart) indicating the City cannot make a major change to its crowd control polices without review by that Court and this Court simultaneously ordering a major change to those same policies.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 2 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The TRO Motion filed by Plaintiffs cannot win what is essentially a motion for reconsideration of this Court's earlier decision. This Court has already determined that both constitutional rights  and public safety can be protected and safeguarded with the City's continued ability to access – should a serious public safety need arise - blast balls and, in extremely rare situations, tear gas. For these reasons, and further reasons outlined below, the motion for a entry of another TRO should be denied in its entirety.

**PROCEDURAL BACKGROUND AND FACTUAL CONTEXT**

On August 3, 2020, Plaintiffs filed a Complaint seeking injunctive relief. (Dkt. 1). Plaintiffs also sought a TRO that is the subject of this Response. (Dkt. 4).

I.      SPD Policy and Federal Oversight

      a.   *Background on policy and federal oversight.*

SPD's use-of-force policy and practices have been subject to extensive federal oversight since the City voluntarily entered into a Consent Decree in 2012 to address allegations by the U.S. Department of Justice's that SPD was engaging in a pattern or practice of excessive force. *United States v. City of Seattle*, Civ. No. 12-1282 (WD WA). The Consent Decree imposes extensive requirements relating to, among other things, SPD's use-of-force policy and training, as well as the reporting and investigation of all force used SPD officers. *Id.* (Dkt. 3-1, ¶¶ 69-129). The federal court overseeing the Consent Decree and the court-appointed Monitor approved an overhaul to SPD's use-of-force policy and training throughout 2014 and 2015 (Dkts. 115, 153, 168, 199) and continue to approve regular updates and revisions to those policies. *Id.* (Dkts. 225, 447, 509).

The SPD Policy Manual authorizes the use of a less-lethal tool called a 40-mm launcher, which discharges polymer bolts with a sponge tip. SPM 8.300-POL-11. CS gas (tear gas) is not mentioned in the SPD Manual. As with <u>any</u> use of force, the deployment of OC Spray, Blast Balls,

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 3 (2:20-cv-01174 RAJ)

1    and the 40-mm launcher must be reasonable, necessary, and proportional. SPM 8.300-POL-5(3),

2    8.300-POL-10(3), 8.300-POL-11(7).

3        In addition to its use-of-force policy, SPD also has a specific policy addressing crowd

4    management.[3] The court overseeing the Consent Decree, the Monitor, and the U.S. Department of

5    Justice approved SPD's Crowd Management Policy on February 2, 2017. *United States v. City of*

6    *Seattle,* Civ. No. 12-1282 (Dkt. 363).

7            *b.  CCW Ordinance and Judge Robart's TRO.*

8        As Plaintiffs' discuss in their Complaint, the Seattle City Council passed Ordinance No.

9    119805 banning certain crowd control weapons ("CCW Ordinance"). (*see* Dkt. 1, pp. 5-6).[4] The

10   CCW Ordinance prohibits the City's use or possession of "crowd control weapons," which are

11   defined to include "kinetic impact projectiles, chemical irritants, acoustic weapons, direct energy

12   weapons, water cannons, disorientation devices, ultrasonic cannons, or any other device that is

13   designed to be used on multiple individuals for crowd control and is designed to cause pain or

14   discomfort." The CCW Ordinance excepts OC spray outside a "demonstration, rally, or other First

15   Amendment-protect event." However, OC must not "land on anyone other than…an individual in the

16   process of committing a criminal act or presenting an imminent danger to others." The CCW

17   Ordinance was scheduled to implement on July 26, 2020. On July 24, 2020, the United States sought

18   an emergency motion for entry of a TRO before Judge Robart to enjoin implementation of the CCW

19   Ordinance until it could be reviewed under the terms of the Consent Decree. *United States v. City of*

20   *Seattle,* 12-cv-1282 (Dkt. 627). Judge Robart granted the motion. (*Id.* at Dkt. 630).  In issuing his

21   TRO, Judge Robart noted:

22

23   ---
[3] Available at http://www.seattle.gov/police-manual/title-14---emergency-operations/14090---crowd-management
[4] Available at:   https://seattle.legistar.com/View.ashx?M=F&ID=8656981&GUID=8C1C2C66-AB23-4984-A059-CF0E6D1D9DCB.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 4 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

> [T]he court agrees that by removing all forms of less lethal crowd control weapons from virtually all police encounters, the Directive and the CCW Ordinance will not increase public safety. This is so particularly because neither the CCW Ordinance nor the Directive provide time for police training in alternative mechanisms to de-escalate and resolve dangerous situations if the crowd control implements with which the officers have been trained are abruptly removed.

*United States v. City of Seattle,* 12-cv-1282 (Dkt. 630 at pp.6-7). The Court further Ordered that abrupt changes in expectations for officers' access to crowd control weapons "presents risks to both the officers' and the public's safety." (*Id.* at p. 7).

II.     *Black Lives Matter v. City of Seattle*

Concurrent with ongoing consent decree proceedings before Judge Robart, a separate injunctive action was filed and assigned to this Court on June 9, 2020. *Black Lives Matter et al. v. City of Seattle,* 20-cv-00887. Plaintiffs' allegations in the instant case mirror those of the plaintiffs in *Black Lives Matter. See Black Lives Matter,* 20-cv-00887 (Dkts. 1, 6). In fact, Plaintiffs' requested relief in the instant case is identical to that which was sought by the plaintiffs in *Black Lives Matter. See Black Lives Matter,* 20-cv-00887 (Dkt. 6-1). After briefing, argument, and a weighing of the equities, this Court temporarily enjoined the City of Seattle with a carefully crafted Temporary Restraining Order, not restricting the crowd control devices as the plaintiffs sought in that case or as Plaintiffs seek here, but rather, the specific manner in which such devices can be used. *Black Lives Matter,* 20-cv-00887 (Dkt. 34). After a stipulation, the TRO was converted to a preliminary injunction that is still in effect today. (Dkt. 42).

III.    Facts pertaining to Plaintiffs and supporting declarations.

Plaintiffs do not cite to facts in their Motion, but rather, submitted several declarations in support thereof. Those declarations are summarized below.

/

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 5 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### A. <u>Plaintiff Jessica Benton</u>

Plaintiff Benton previously attended demonstration events in Seattle. (Dkt. 5, ¶ 3). She attended the July 25, 2020 demonstration in Seattle with a borrowed pair of "chemical goggles." (*Id.* at ¶ 4). Plaintiff left the march after 45 minutes because she alleges that she "heard explosions and saw tear gas being deployed." (*Id.* at ¶ 5). Plaintiff claims that due to her medical condition, she cannot be in an area where tear gas is deployed. (*Id.* at ¶¶ 6-8). Plaintiff alleges that she purchased a mask online, which was a hardship for her. (*Id.* at ¶ 10). Plaintiff did not claim injury from the crowd control devices.

### B. <u>Plaintiff Clare Thomas</u>

Ms. Thomas attended previous demonstration events in the City of Seattle without any "protective equipment." (Dkt. 7, ¶ 3). Ms. Thomas attended the July 25, 2020 demonstration in Seattle. At that demonstration, Ms. Thomas claims that "flash bangs" were deployed near her. (*Id.* at ¶ 5). Ms. Thomas now asserts that she "felt the need to order more advanced protective gear before going back out to protest and I need to order a gas mask, respirator, knee pads and before returning to protest." (*Id.* at ¶ 7). She did not claim any injury from the crowd control devices.

### C. <u>Anne Marie Cavanaugh</u>

Plaintiff Cavanaugh previously attended protest events. (Dkt. 6, ¶ 3, 7). She claims that she marched for some time, but then perceived that Seattle Police Officers were "shooting and gassing us." (*Id.* at ¶ 4). Plaintiff claims to have felt threatened and scared. (*Id.* at ¶¶ 5-7). Ms. Cavanaugh claims: "I am not sure what I would need to be safe at a protest in the future but would imagine I would need at a minimum some protective eye covering, a gasmask . . . it makes me scared to go back because I feel too threatened by what could happen to me. I think maybe a shield would help. I am hoping to get guidance from younger protesters as to where and how to get protective gear – I do

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 6 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

not know where to even begin." (*Id.*at ¶¶ 9-10). She did not claim any injury from the crowd control devices.

### D. Plaintiff Shelby Bryant

Plaintiff Bryant attended demonstration events throughout June and July in Seattle and claims that she was "aware of the potential for police violence" at protests. (Dkt. 8, ¶ 5). Ms. Bryant attended the July 25, 2020 demonstration event. (*Id.* at ¶ 6). She wore goggles along with pants and a long-sleeved shirt along with an ATV helmet purchased "on a whim" on the way to the protest. (*Id.* at ¶ 7). Ms. Bryant alleges that the helmet protected her from injury while being "hit with explosives by Seattle Police Department officers." (*Id.* at ¶ 9-10). Ms. Bryant claims that she was "hit" with an unspecified object on the leg causing bruising and difficulty walking. (*Id.* at ¶ 11). Ms. Bryant also claims that she experienced a "blast of unidentifiable smoke." (*Id.* at ¶ 12). Ms. Bryant claims that she was fearful of being targeted "with rubber bullets, grenades and gas when we were just walking or standing still; it felt impossible to avoid these tactics because they were used without provocation." (*Id.*¶ 14). Ms. Bryant claims that she "felt the need to order more advanced protective gear before going back out to protest and [] ordered a gas mask, respirator, knee pads and more face masks" that were delivered two-three days after the demonstration event on July 25. (*Id.* at ¶ 15). Ms. Bryant claims that she missed six demonstration events while waiting for her protective gear. (*Id.* at ¶ 17). Ms. Bryant claims that she plans to return to demonstrations now that she has her protective equipment. (*Id.* at ¶ 19).

### E. Alyssa Garrison

Plaintiff Garrison has been attending demonstrations since 2016. (Dkt. 9, ¶ 3). Ms. Garrison claims that she acquired "a helmet, chemistry goggles and an umbrella for protection" after the May 29, 2020 demonstration event. (*Id.* at ¶ 4). Ms. Garrison claims she was injured during the June 1,

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 7 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

2020 demonstration event by what she identifies as a rubber bullet. (*Id.* at ¶ 5). Ms. Garrison claims additional injuries due to alleged exposure to less lethal devices deployed by Seattle Police. (*Id.* at ¶ 6). Ms. Garrison claims that she was unable to attend demonstration events for two weeks. (*Id.* at ¶ 7). Ms. Garrison attended the July 25, 2020 demonstration event and "wore head-to-toe protective gear, saline, water and bandages." (*Id.* at ¶ 8). Ms. Garrison references injuries allegedly incurred by friends. (*Id.* at ¶¶ 9-11). Ms. Garrison indicates that she was scared to attend a protest the next day and due to witnessing the use of chemical irritants on friends, Ms. Garrison felt that she needed a "respirator" for protection. (*Id.* at ¶¶ 12-13). Ms. Garrison ordered a respirator and claims to have missed two protests while waiting for her respirator. Ms. Garrison does not claim any injury from the crowd control devices used on July 25, 2020.

F. <u>Non- Plaintiff Victoria Ramon</u>

Non-party Ms. Ramon claims to run a fundraising website for protective equipment for "live streamers" and protesters that was started on July 3, 2020. (Dkt. 20, ¶¶ 2-4). Ms. Ramon claims to have "raised $13,285 and used $10,436.28." (*Id.* at ¶ 7).

G. <u>Counsel Talitha Hazelton</u>

Plaintiffs' counsel submitted a declaration indicating a demonstration event occurring on August 5, 2020 (today). In this declaration, Plaintiffs' counsel identifies the graphic for the demonstration event. (Dkt. 19, ¶ 3-4). Plaintiff notes, "the graphic itself underscores the Plaintiff's point: gas masks have become a necessity at protest such that it makes its way into the quotidian gear of protesters themselves, and further into popular art calling for action." (*Id.* at ¶ 4). No Plaintiffs identified whether they plan to attend the August 5, 2020 demonstration event.

/

/

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 8 (2:20-cv-01174 RAJ)

IV.     July 25, 2020 events.

The City adopts and incorporates the July 29, 2020 declaration of Lt. John Brooks filed in the *Black Lives Matter* litigation to address the July 25, 2020 events in detail. *Black Lives Matter,* 20-cv-887 (Dkt. 83). The July 25, 2020 demonstration had an estimated crowd of 5,000-7,000 demonstrators. SPD had approximately 150 officers monitoring events.   (*Id.* at ¶¶13-14). The demonstrator event began around 1:00 p.m. and proceeded peacefully for nearly two hours. (*Id.* at ¶ 15). At around 3:45 p.m., there were reports that individuals had set fires in trailers at the King County Youth Services Center (YSC) site. (*Id.*). There was additional reporting of a Starbucks with windows smashed and with smoking emitting from the location. Occupied apartments were located above the Starbucks store. (*Id.* at ¶ 16). Reports continued to come in of additional damage to businesses with an assault on a business owner. (*Id.* at ¶ 17). Crowds then surrounded the East Precinct and an explosive device pierced the wall of the East Precinct and got inside. (*Id.*). The demonstrator event was declared a "riot."[5] (*Id.* at ¶ 18). Ongoing physical clashes occurred between individuals in the crowd and law enforcement officers. (*Id.*). Less lethal devices were deployed by officers. Furthermore, no officers used or deployed any CS gas (tear gas) at any point on July 25, 2020. (*Id.* at ¶ 18). In total, 59 of the 150 officers reported injuries. (*Id.* at ¶ 23). This Court scheduled an evidentiary hearing later this month to assess whether here is clear and convincing evidence that such use of the devices was consistent with this Court's preliminary injunction. *See Black Lives Matter,* 20-cv-887 (Dkt. 90).

## LEGAL STANDARD

A TRO is an "extraordinary and drastic remedy." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). TROs "should be restricted to serving [its] underlying purpose of preserving the status quo

---

[5] We now know that this occurred at approximately 1623 hours. *Black Lives Matter,* 20-cv-887 (Dkt. 83).

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 9 (2:20-cv-01174 RAJ)

and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974). "[T]he standards for issuance of a temporary restraining order are at least as exacting as those for a preliminary injunction." *Pohlman v. Hormann*, 2014 WL 5425502 *1 n.1 (D. Or. Oct. 20, 2014) (citing *Los Angeles Unified Sch. Dist. v. United States Dist. Court for the Cent. Dist. of Cal.,* 650 F.2d 1004, 1008 (9th Cir. 1981)). To warrant injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Klein v. City of San Clemente*, 584 F.3d 1196, 1199 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). "Plaintiffs bear the burden of proving each one of the [four] elements." *Klein,* 584 F.3d at 1201. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldridge,* 844 F.2d 668, 674 (9th Cir. 1998). Plaintiffs fail to meet this standard.

## ARGUMENT

I.      Well-Established Judicial Principles Bar Repeated Litigation of the Same Facts by New Plaintiffs Desiring a More Restrictive Injunction than Previously Ordered.

Plaintiffs are the second group of litigants to ask this Court to provide injunctive relief barring crowd management tools based on the same set of political demonstrations. Previously, this Court identified and Ordered appropriate injunctive relief, allowing individuals to "express their political beliefs" through "orderly, nonviolent protests" while preserving public safety by defining the proper scope of law enforcement tools "when violent offenders choose to disrupt constitutionally protected activity." *Black Lives Matter*, 20-cv-887 (Dkt.4, p. 4, lines 7-11). This Court made that determination

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 10 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

after reviewing events at most of the same demonstrations Plaintiffs reference in their Complaint. *Compare, generally*, *Black Lives Matter* Complaint *to Benton* Complaint.

The July 25 demonstration, which is the only one occurring post-injunction which is mentioned in Plaintiffs' pleadings, cannot be characterized as an orderly, nonviolent protest. As briefing in *Black Lives Matter* makes clear, people committing violence and destruction took actions that day, which included setting numerous fires, an explosive that caused a hole in a police precinct wall, and repeatedly assaulting police with projectiles, resulting in reported injuries to 59 of the 150 police officers assigned to the 5000-7000 person demonstration. See, e.g., *Black Lives Matter,* 20-cv-887 (Dkt. 83).  As has now been widely reported, some individuals prepared in advance for the violence that ensued, including by bringing to the protest area a van filled with explosives and protective gear.[6] The demonstration was eventually declared a riot due to the intense and widespread violence from the crowd.  Plaintiffs' plead no facts regarding the July 25 demonstration that warrant a rebalancing of the equities. Mechanisms already exist for evaluating compliance with the existing injunction and proceedings are already underway regarding the July 25 demonstration. Simply put, absent a significant change in circumstances that alters the prior balance of equities, Plaintiffs fail to justify the necessity for a more restrictive Order than the one previously contemplated by this Court – a desire for a different outcome is insufficient.[7]

---

[6] See SPD Blotter and accompanying video https://spdblotter.seattle.gov/2020/07/29/detectives-serve-search-warrant-recover-items-used-in-weekend-demonstration/

[7] During a phone conversation on August 2, 2020, Plaintiffs' counsel called to request that the City stipulate to a TRO prohibiting the use of crowd control devices. (Dkt. 18, ¶¶ 2-3). Without further information or a document to review, the City's counsel advised that Plaintiffs' request for entry of a TRO appeared to contradict determinations made by Judge Robart in *United States v. City of Seattle,* 12-cv-1282-JLR and would be in potential conflict with this Court's preliminary injunction in *Black Lives Matter v. City of Seattle*, Case No. 2:20-cv-00887-RAJ, Dkt. No. 42, (W.D. Wash. June 17, 2020). (Sharifi Dec., ¶ 4). Counsel for Defendants asked Plaintiffs' counsel if Plaintiffs were requesting that Judge Robart or Judge Jones' Orders be modified or stricken. (*Id.* at 4). Plaintiffs' counsel acknowledged the conflict between Plaintiffs' requested relief and the existing Court orders defined above but noted that she wanted a federal judge to restrict the crowd control devices at issue. (*Id.*). Plaintiffs' counsel failed to take the required action of revealing these related cases in the Civil Cover Sheet (Dkt. 3).

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 11 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

It is well-established that preventing unnecessary re-litigation is of paramount importance to our judicial system.  For example, one of the very few exceptions to the bar against federal courts from enjoining state court proceedings is when an injunction is necessary to protect a prior federal court judgment, by stopping the state court from litigating claims and issues that the district court has already decided. *See, e.g., Brothers Records, Inc. v. Jardine,* 432 F.3d 939, 942-943 (9th Cir. 2005).

"Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S. Ct. 645 (1979). This Court has already squarely addressed the issue at hand, held that securing constitutional rights of demonstrators requires injunctive relief regarding the City's use of crowd management tools (blast balls, OC spray, tear gas) and identified and Ordered an available legal remedy in light of the equities. The prior litigants requested the same relief and were unsuccessful in securing the requested absolute bar on less-lethal devices. The United States Supreme Court rejected the concept of "[p]ermitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out.' *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 328, 99 S. Ct. 645, 650, 58 L. Ed. 2d 552 (1979). (quoting *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952)). "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.,* 439 U.S. at 331. While Plaintiffs may wish to proceed as if the earlier judicial decisions never occurred, the principles and purposes of collateral estoppel bar this attempted second run at an already-rejected complete injunctive bar on SPD's crowd management tools.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 12 (2:20-cv-01174 RAJ)

Plaintiffs' decision to bring a third Constitutional claim, in addition to the prior claims regarding the First and Fourth Amendment, does not change the legal analysis in their favor. The doctrine of res judicata bars claims that have either been litigated, as is the case with the First and Fourth Amendment claims, or that could have been litigated, such as the new (and legally deficient) Equal Protection claim, from being litigated again.  "The broad general rule of res judicata suggests that a party is always prohibited from litigating a claim or issue that could have been raised in any earlier suit."  *Eugster v. Washington State Bar Ass'n*, 198 Wn. App. 758, 786, 397 P.3d 131 (2017); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980)(a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action).  Under Washington law, for the doctrine of res judicata to apply, a prior judgment must have a concurrence of identity with a subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made. *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983); *Berschauer Phillips Construction Co. v. Mutual of Enumclaw Insurance Co.*, 175 Wn. App. 222, 227-28, 308 P.3d 681 (2013).  With respect to the identity of parties element, the Washington Supreme Court holds:

> [W]here 'nominally different parties' pursue causes of action as voters, on behalf of the body politic generally, such parties have been found to "have sufficiently identical interests to satisfy the 'identity of parties' inquiry" because they possess "the same legal interests as all citizens of the state." [citations omitted]  While Karr [the plaintiff in one of the cases] was not a participant in the *Borders* case, she is acting in the same capacity, and has the same legal interest, as the participants in that case."

*In Re Coday,* 156 Wn.2d 485, 501, 130 P.3d 809 (2006).   Here, the same reasoning applies to find the Plaintiffs in privity with the earlier litigants. Importantly, res judicata "treats a judgment, once rendered, as the full measure of relief to be accorded." *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir.1986) (quoting *South Delta Water Agency v. United States, Dep't of Interior, Bureau of*

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 13 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Reclamation*, 767 F.2d 531, 538 (9th Cir. 1985) (emphasis added). While Plaintiffs seek an expanded measure of relief, it is an improper request because the full measure of relief has already been provided.  Long-standing principles of judicial economy apply here.[8] Not only do Plaintiffs provide no basis for new, expanded relief to protect constitutional rights during demonstrations, when the Robart Order is factored in, it becomes clear that Plaintiffs' requested relief is barred by not one, but two, federal court orders.

II.    Plaintiffs Fail to Establish a Likelihood of Success on the Merits.

Plaintiffs must establish that they likely will succeed on the merits of their constitutional claims.  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). A "possibility" of success is insufficient to meet this standard. Plaintiffs must make a "clear showing" that they are entitled to preliminary relief. *Id.* Even if Plaintiffs produce "a significant body of evidence that establishes some probability of success on their individual claims for relief for past violations of 42 U.S.C. § 1983 . . . ultimate success on these claims would entitle plaintiffs to money damages only, *not* injunctive relief." *Campbell v. City of Oakland,* No. C 11-5498 RS, 2011 WL 5576921, at *3-4 (N.D. Cal. Nov. 16, 2011). "Sporadic or isolated violations of individual protesters' rights are insufficient to support broad injunctive relief against an entire agency." *Id.* (citing *Lewis v. Casey,* 518 U.S. 343, 360, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Plaintiffs cannot meet this high standard.

/

---

[8] While res judicata and collateral estoppel are normally applied towards final judgments, and some jurisdictions such as California, would not apply those principles with respect to a ruling on a prior motion, when these doctrines are to be applied to the same sought-after relief based on the same set of facts, there can be no question that their application is proper here. *See, e.g., Martinez v. Craven*, 429 F.2d 18, 20 (9th Cir. 1970)(Noting that while California's "refusal [...] to expand the doctrine of res judicata beyond its conventional boundaries" is not unconstitutional, "[c]onsistency in legal rulings is desirable")

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 14 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*a. Plaintiffs fail to show a likelihood of success on their First Amendment claims.*

"[G]overnment officials may not exclude from public places persons engaged in peaceful expressive activity solely because the government actor fears, dislikes, or disagrees with the views those persons express." *Wood v. Moss*, 572 U.S. __, 134 S. Ct. 2056, 2066 (2014). The First Amendment does not, however, "leave people at liberty to publicize their views 'whenever and however and wherever they please.'" *Id.* To establish their First Amendment claims, Plaintiff must establish that (i) the City's actions "deterred or chilled" their political speech, and (ii) that such deterrence was a "substantial or motivating factor" in the City's conduct. *Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir. 1999); *see also*, *Jurkowski v. City of Seattle*, C15-1155 TSZ, 2017 WL 4472859, at *12 (W.D. Wash. Oct. 5, 2017). Plaintiffs have not established a likelihood to succeed on this claim.

The City's position regarding First Amendment claims about this summer's protests has not changed: it continues to believe that SPD used crowd management tools appropriately, without malice towards the message of peaceful protesters. The City therefore relies upon its briefing in *Black Lives Matter*. *Black Lives Matter,* 20-cv-887 (Dkt. 29 page 15-16). That said, the calculation regarding whether there is a chilling effect present based on potential use of crowd management tools is actually less in Plaintiffs' favor than was claimed and identified for previous litigants, for two distinct reasons. First, the status quo has shifted. Whereas before there were SPD policies in place that limited the use of crowd management tools to only when it was absolutely required, this Court's Order in *Black Lives Matter* further defines appropriate uses. This Order is now reiterated to SPD officers at the commencement of every demonstration management assignment, and City leadership has endorsed the Order by entering into a voluntary agreement to extend the Order by many months beyond the 14-day period it was initially intended to cover. (Dkt. 42). The commitment to limited, appropriate

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 15 (2:20-cv-01174 RAJ)

use of blast balls and OC spray is clear; the additional limitations on tear gas are self-imposed even beyond what the Court ordered. *See Black Lives Matter,* 20-cv-884 (Dkt. 83).

Additionally, the July 25 demonstration event cannot effectively be used to claim that the chilling effect has worsened.  Even without the evidence submitted in the City's briefing regarding the contempt motion *Id.* (Dkts. 78, 80-85), this Court may take judicial notice of widely known current events. The violence occurring on July 25 was vastly different than at other protests in June and July.  If a "serious expression of an intent to commit an act of unlawful violence is not protected" First Amendment expression, actual violent acts are similarly not protected. *See Virginia v. Black,* 538 U.S. 343, 359, 123 S. Ct. 1536 (2003). Arson and violent assaults on civilians and officers with explosives and projectiles are not protected speech. Therefore, responding to violent acts with crowd management tools cannot have a chilling effect on First Amendment expression, because it is entirely unrelated to First Amendment expression.

> ### b.  *Plaintiffs fail to show a likelihood of success on their Fourth Amendment claims.*

A person is "seized" when officers, by means of physical force or show of authority, terminate or restrain the person's freedom of movement "through means intentionally applied." *Nelson v. City of Davis,* 685 F.3d 867, 875 (9th Cir. 2012). Once a seizure is deemed to have occurred, courts evaluate the reasonableness of the seizure and force used to effectuate that seizure. Evaluation of whether a person was subject to excessive force requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Luchtel v. Hagemann,* 623 F.3d 975, 980 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396)). Courts evaluate the facts and circumstances of each case, including an assessment of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight." *Id.* The Court must evaluate "the totality of the circumstances," judging the reasonableness of the particular use of force from the perspective of a reasonable officer on the scene, not with "the 20/20 vision of hindsight," and bearing in mind that police officers need not use the least intrusive means available to them. *Id.* at 980, 982.

"What is reasonable in the context of a [potentially violent large-scale protest]" is different from what is reasonable in other, relatively calm, situations. *See Bernini v. City of St. Paul,* 665 F.3d 997, 1003 (8th Cir. 2012). "The wholesale commission of common state-law crimes creates dangers that are far from ordinary. Even in the context of political protest, persistent, organized, premeditated lawlessness menaces in a unique way the capacity of a State to maintain order and preserve the rights of its citizens." *Forrester v. City of San Diego,* 25 F.3d 804, 807 (9th Cir. 1994) (citing *Bray,* 506 U.S. at ——, 113 S.Ct. at 769 (Kennedy, J., concurring)).

There is an insufficient factual record to establish that Plaintiffs were subject to Fourth Amendment violations. Plaintiffs Benton, Thomas, and Cavanaugh have not identified any direct injury from the use crowd control devices. (Dkts. 5-7). Plaintiffs Bryant and Garrison identify injuries from demonstrations, but there is not enough to evaluate whether Plaintiffs are likely to prevail on the merits.

      *c.  Plaintiffs fail to show a likelihood of success on their Equal Protection claims.*

Plaintiffs' Motion for Entry of TRO is silent on equal protection. Plaintiffs fail to identify how the *City* is compelling Plaintiffs to "pay to protest" to meet the high threshold for equal protection.

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074–75, 145 L. Ed. 2d 1060 (2000) (citations and quotations omitted). To state an equal protection violation under the Fourteenth Amendment, a plaintiff must usually allege a government acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 687 (citation and quotation omitted). An equal protection claim will not lie by "conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (citing *Joyce v. Mavromatis,* 783 F.2d 56, 57 (6th Cir. 1986)). Similarly, "evidence of different treatment of unlike groups does not support an equal protection claim." *Id.* at 1168.

Though their TRO motion is silent, Plaintiffs' Complaint notes, "the continued misuse of war munitions by SPD against civilians turns the streets – a public forum and site of protest – into a pay-to-protest racket where only a privileged few who are wealthy enough or popular enough to crowdsource funds to purchase gear akin to that used by the police department they fund can truly be in the streets." (Dkt. 1, p. 8). In support, Plaintiffs rely on *Harper v. Virginia Board of Elections*. 383 U.S. 663 (1966). (Dkt. 1, p. 18). *Harper* is inapplicable. *Harper* related to the imposition of a poll tax before citizens were *permitted* to exercise their First Amendment right to vote. No such restrictions exist in this case. No individual member of the public has been denied their right to demonstrate with or without "protective equipment." *See Olagues v. Russoniello,* 770 F.2d 791, 802 (9th Cir. 1985). There is no City requirement that members of the public must wear "protective equipment" to demonstrate. In fact, Plaintiffs themselves have demonstrated repeatedly at demonstrations where

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 18 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

less lethal devices were used by Seattle Police without protective equipment and have continued to exercise their First Amendment rights even after those instances with or without varying degrees of protective equipment. (*See e.g.* Dkt. 8, ¶ 5; Dkt. 9, ¶ 4). Plaintiffs also cannot ignore the many demonstration events where less lethal devices were not used, and protesters were able to exercise their First Amendment rights without "protective equipment."

In short, Plaintiffs fail to establish a reasonable likelihood of success on the merits of their Equal Protection claim, where they fail to show an official policy, custom, or practice of the City that there was an intent or purpose to discriminate against demonstrators not wearing "protective equipment" by use of less lethal devices. Demonstrations continue with Seattle Police Officers not using any less lethal devices at most of the demonstration events. Demonstrations continue with protesters wearing varying items of clothing and equipment without any arbitrary limitation or restriction on their ability to exercise their First Amendment rights. Plaintiffs' fail to establish a probability of success for their equal protection claim.

III.    Plaintiffs Will Not Incur Imminent Irreparable Harm.

To obtain a TRO, Plaintiffs must establish that they will suffer immediate and irreparable injury in the absence of the requested relief. *Hodgers-Durgin v. Gustavo De La Vino,* 199 F.3d 1037 (9th Cir. 1999). Plaintiffs own declarations defeat this element. "The propriety of a temporary restraining order, in particular, hinges on a significant threat of irreparable injury that must be imminent in nature." *Gish v. Newsom,* 2020 WL 1979970, at *3 (C.D. Cal. Apr. 23, 2020).   "[A] federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983).

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs' sworn declarations hinge on needing "protective equipment" to continue to feel comfortable demonstrating. Notably, however, every Plaintiff in this matter claims that they have demonstrated and intend to continue to demonstrate with varying pieces of "protective equipment." (Dkts. 5-9). Every Plaintiff in this matter either purchased or intends to purchase "protective equipment" to continue to demonstrate. *See* (*Id.*). Plaintiffs' counsel declares that there is a demonstration event on the date of the filing of this Response (Dkt. 19) – an event organized and planned with intended attendance, but silent on the Plaintiffs' own attendance. Plaintiffs fail to substantiate imminent irreparable harm in their motion for entry of a TRO, especially as Plaintiffs have procured or are in the process of procuring the necessary "protective equipment."

IV.     Balance of Equities and Serving the Public Interest.

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The City agrees that in the context of government action, the balance of the equites factor merges with the public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The posture of the requested relief in this case – a total prohibition on less lethal devices– cannot avoid the existing Court orders on this issue. (*See* Dkt. 6-1). This Court's preliminary injunction and Judge Robart's TRO heavily weight the "balance of equities" in the City's favor.  The City agrees that in the context of government action, the balance of the equites factor merges with the public interest.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). In contrast, the City does not dispute Plaintiffs' constitutional rights weigh heavily on the Plaintiffs' side of the scale –the Seattle Police Department's policies around crowd management are designed to facilitate and support free speech. Nonetheless, this Court in its *Black Lives Matter* preliminary injunction and

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 20 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Judge Robart in his TRO fully recognized the needs for the City to protect the interests of public and officer life and safety or the need to protect public and private property.

The July 25 demonstration events highlight the need for this careful balancing with the result of intentional fires set, assaults, heavy vandalism, members of the crowd using of projectiles and explosives. *See Black Lives Matter,* 20-cv-887 (Dkt. 83). A TRO prohibiting the use of less lethal devices will weigh heavily against the need for the City to continue to protect life safety and property. Recognizing the Plaintiffs right to demonstrate peacefully, an abrupt termination of the use of such devices will not enable enough time to adopt and implement "alternative mechanisms to de-escalate and resolve dangerous situations if the crowd control implements with which the officers have been trained are abruptly removed." *United States v. City of Seattle,* 12-cv-1282 (Dkt. 630 pp.6-7). This may yield dangerous results for the public and for law enforcement. This Court's careful balancing in *Black Lives Matter* of the manner in which such devices may be used provides the necessary and contemplated "mandated restraint." A modification of that Order to an outright prohibition removes the life-safety considerations creating potentially dangerous circumstances. Plaintiffs are asking for this Court to assess overlapping facts, overlapping equities and to yield a different result. In short, Plaintiffs fail to establish why they are entitled to heightened relief, beyond the scope already provided by this Court's order in *Black Lives Matter.*

V.      Plaintiffs lack standing to seek injunctive relief.

Plaintiffs all represent that they have attended demonstrations and that they intend to continue to do so. (Dkts. 5-9). Plaintiffs all indicate that they have purchased or intend to purchase "protective equipment" to facilitate continued demonstration. (*Id.*). Plaintiffs fail to establish standing to seek injunctive relief without identifying a concrete, particularized, actual and imminent threat of harm.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 21 (2:20-cv-01174 RAJ)

Article III, section 2 of the United States Constitution limits federal jurisdiction to actual "Cases" or "Controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Jurisdiction is a threshold question that must be resolved in every federal proceeding. *City of Los Angeles v. Kern*, 581 F.3d 841, 845 (9th Cir. 2009). Courts should assume the absence of jurisdiction unless the record affirmatively shows otherwise. *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). "Whether the question is viewed as one of standing or ripeness, the Constitution mandates that […] the issues presented are definite and concrete, not hypothetical or abstract[.]" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138-9 (9th Cir. 2000) (en banc) (internal citations and quotations omitted). Plaintiffs, the party invoking federal jurisdiction, bear the burden of alleging specific facts sufficient to establish standing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 5460 (1992).  Furthermore, each Plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Evtl Servs, Inc,* 528 U.S. 167, 185 (2000).

Plaintiffs do not meet the mandatory threshold requirement of Article III constitutional standing to obtain injunctive relief. "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Shell Offshore, Inc. v. Greenpeace, Inc.* 709 F.3d 1281, 1286–87 (9th Cir. 2013).

Plaintiffs identify that they can and will continue to attend protest events.  This Court's existing Order defining the manner in which the City may deploy crowd control devices is still in effect. Plaintiffs cannot establish standing regardless of Plaintiffs' speculative fear of future injury to other from the crowd management tools or a claimed chilling effect on protected speech. Their

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER- 22 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1  Complaint does not show that they are entitled to any relief beyond that already provided by this

2  Court in the *Black Lives Matter* litigation and the consent decree proceedings.

3                                          **CONCLUSION**

4          Plaintiffs fail to meet the very high burden for this Court to modify its existing preliminary

5  injunction in *Black Lives Matter* or to potentially conflict with Judge Robart's TRO in the Consent

6  Decree litigation. Plaintiffs fail to meet the necessary requirements that would entitle them to

7  injunctive relief far beyond the mandated restraint already constructed by this Court. This Court

8  should deny Plaintiffs' request for entry of a TRO.

9          DATED this 5th day of August, 2020.

10                                 PETER S. HOLMES
                                   Seattle City Attorney

11

12                                 By:   */s/ Ghazal Sharifi*
                                   Ghazal Sharifi, WSBA# 47750

13
                                   By:   */s/ Carolyn Boies*
14                                 Carolyn Boies, WSBA# 40395

15                                 Assistant City Attorneys

16                                 E-mail:  Ghazal.Sharifi@seattle.gov
                                   E-mail:  Carolyn.Boies@seattle.gov
17                                 Seattle City Attorney's Office
                                   701 Fifth Avenue, Suite 2050
18                                 Seattle, WA 98104
                                   Phone:  (206) 684-8200
19
                                   *Attorneys for Defendant City of Seattle*
20

21

22

23

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 23 (2:20-cv-01174 RAJ)

**CERTIFICATE OF SERVICE**

I certify that on the 5th day of August, 2020, I caused a true and correct copy of this document to be served on the following via CM/ECF:

Jessica Talitha Hazelton
ESPADA CRIMINAL DEFENSE PS
1001 4TH AVE STE 3200
SEATTLE, WA 98154
206-469-5987
talitha@thesmithlaw.com
Attorney for Plaintiffs

/s/ *Ghazal Sharifi*
Ghazal Sharifi
Assistant City Attorney

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER- 24 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200