HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSICA BENTON, SHELBY BRYANT, ANNE MARIE CAVANAUGH, ALYSSA GARRISON, AND CLARE THOMAS,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF SEATTLE,<br><br>    Defendant. | Case No. 2:20-cv-01174-RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order. Dkt. # 4. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the motion is **DENIED**.

## II. BACKGROUND

**A.** *Black Lives Matter Seattle-King County v. City of Seattle*, **No. 2:20-cv-00887-RAJ (W.D. Wash. filed June 9, 2020)**

Two months ago, Black Lives Matter Seattle-King County and several other plaintiffs sued the City of Seattle ("City"). *Black Lives Matter Seattle-King County v. City of Seattle*, No. 2:20-cv-00887-RAJ (W.D. Wash. filed June 9, 2020) (Dkt. # 1). That matter is currently pending before this Court.

ORDER – 1

The plaintiffs there allege that, following the death of George Floyd in Minneapolis, protests in Seattle ensued and that, on certain occasions, the Seattle Police Department ("SPD") exercised unconstitutional force to suppress the protesters. *Id.* The plaintiffs assert claims for violations of their First and Fourth Amendment rights. *Id.* After they filed their complaint, the plaintiffs moved for a temporary restraining order ("TRO"). *Id.* (Dkt. # 6). After reviewing the parties' briefs and conducting oral argument, the Court granted the motion. *Id.* (Dkt. # 34). Days later, the parties stipulated to a preliminary injunction, which the Court also granted. *Id.* (Dkt. # 42). That preliminary injunction, in part, maintains:

> (1) The City of Seattle, including the Seattle Police Department and any other officers, departments, agencies, or organizations under the Seattle Police Department's control (collectively, "the City"), is hereby enjoined from employing chemical irritants or projectiles of any kind against persons peacefully engaging in protests or demonstrations. This injunction includes:
>
>> (1) any chemical irritant such as and including CS Gas ("tear gas") and OC spray ("pepper spray") and
>>
>> (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," rubber bullets, and foam-tip projectiles. This Order does not preclude individual officers from taking necessary, reasonable, proportional, and targeted action to protect against a specific imminent threat of physical harm to themselves or identifiable others or to respond to specific acts of violence or destruction of property. Further, tear gas may be used only if (a) efforts to subdue a threat by using alternative crowd measures, including pepper spray, as permitted by this paragraph, have been exhausted and ineffective and (b) SPD's Chief of Police has determined that use of tear gas is the only reasonable alternative available. The Chief of Police may only authorize limited and targeted use of tear gas and must direct it to those causing violent or potentially life-threatening activity. To the extent that chemical irritants or projectiles are used in accordance with this paragraph, they shall not be deployed indiscriminately into a crowd and to the extent reasonably possible, they should be targeted at the specific imminent threat of physical harm to themselves or identifiable others or to respond to specific acts of violence or destruction of property.

ORDER – 2

*Id.* The preliminary injunction is still in effect today. *Id.*; *see also id.* (Dkt. # 90).

Over a month later, on July 27, 2020, the plaintiffs moved for an order to show cause why the City should not be held in contempt for violating the preliminary injunction. *Id.* (Dkt. # 51). The motion was based on events that happened on July 25, 2020, just two days earlier. *Id.* According to the plaintiffs, "on July 25, SPD suddenly and without warning divided the protesters into two groups and began an all-out assault. SPD officers lobbed flash-bang grenades, blast balls filled with pepper spray, and foam tipped bullets into the middle of retreating crowds. People screamed and ran in terror as chaos ensued." *Id.* (Dkt. # 51 at 4) (citations omitted). In support of the motion, plaintiffs filed more than twenty declarations. The City responded, arguing that the plaintiffs "fail[ed] to establish through their required standard of clear and convincing evidence that the Seattle Police Department failed to substantially comply with the terms of this Court's preliminary injunction." *Id.* (Dkt. # 78 at 2).

Weeks after the plaintiffs moved for an order to show cause, the parties entered a stipulation, which the Court granted. *Id.* (Dkt. ## 109, 110). The parties agreed to several items: They agreed to stay all proceedings in the case until Judge Robart, in *United States v. City of Seattle*, No. 12-cv-01282-JLR (W.D. Wash), reviewed the validity and effect of Ordinance 119806 passed by the Seattle City Council. *Id.* (Dkt. # 110). That ordinance banned crowd control irritants and was set to go into effect when Judge Robart temporarily enjoined its implementation, pending his review. *Id.* The stay in *Black Lives Matter* will be lifted once Judge Robart issues a ruling on that matter. *Id.* The parties also clarified the preliminary injunction, specifying, among other things, certain protections for journalists, medics, and legal observers and the City's obligation to issue warnings before using chemical irritants or projectiles. *Id.* Finally, the parties agreed to dismiss without prejudice the plaintiffs' motion for an order to show cause. *Id.*

### B.     This Proceeding

On August 3, 2020, one week after the plaintiffs moved for an order to show cause

ORDER – 3

in the *Black Lives Matter* case, Plaintiffs here filed their complaint and moved for a TRO. Dkt. ## 1, 4. Like the motion for an order to show cause, Plaintiffs' complaint and motion for a TRO are centered on the July 25, 2020 protests. Dkt. # 1 at 2; Dkt. # 4 at 6. And, like the plaintiffs in *Black Lives Matter*, Plaintiffs here assert claims for violations of their First and Fourth Amendment rights. Dkt. # 1 at 16-17.

This case diverges from *Black Lives Matter* in two key ways: First, Plaintiffs here assert a third cause of action for violation of the Equal Protection Clause. *Id.* at 17-18. They say that because prospective protesters need to clad themselves in "cost-prohibitive gear to withstand munitions," they are subject to a "de facto protest tax." *Id.* at 4. Second, Plaintiffs here seek more relief than the *Black Lives Matter* plaintiffs. Plaintiffs request an outright prohibition on certain "less lethal" weapons—a prohibition that enjoins the City, without exception, from "deploying chemical weapons or projectiles of any kind for the purpose of crowd control at protests or demonstrations. This injunction includes prohibitions on: (1) any chemical irritant such as CS Gas ("tear gas") or OC Spray ("pepper spray") and (2) any projectile such as flash-bang grenades, "pepper balls," "blast balls," and rubber bullets." Dkt. # 4-1 at 3.

The City responded to the motion for a TRO, Dkt. # 21, and Plaintiffs replied, Dkt. # 23.

### III.  LEGAL STANDARD

Like a preliminary injunction, issuance of a TRO is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under Federal Rule of Civil Procedure 65(b), a party seeking a TRO must make a clear showing (1) of a likelihood of success on the merits, (2) of a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a temporary restraining order in is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating standard for preliminary injunction); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d

ORDER – 4

832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

## IV.  DISCUSSION

### A.  Likelihood of Success on the Merits and Irreparable Harm

The facts and arguments offered by Plaintiffs here largely track those offered by the plaintiffs in *Black Lives Matter*. Indeed, Plaintiffs' motion here copied—verbatim—several portions of plaintiffs' motion for a TRO. *Compare* Dkt. # 4 at 2-3 ("Since May 25, thousands of protesters have taken to the streets of Seattle—a classic public forum—to protest the gross, systemic injustices perpetrated by law enforcement against people of color generally and Black people specifically. On a nightly basis, these protests against police brutality have been met with police brutality.") *with Black Lives Matter*, (Dkt. # 6) ("Since May 25, thousands of protesters have taken to the streets of Seattle—a classic public forum—to protest the gross, systemic injustices perpetrated by law enforcement against people of color generally and Black people specifically. On a nightly basis, these protests against police brutality have been met with police brutality.").

At bottom, Plaintiffs here argue that, on July 25, 2020, protesters of "police accountability" were subjected to "indiscriminate use [of] 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray." Dkt. # 4 at 6.  The July 25, 2020 protest was much like the protests of late May and early June, which were the impetus behind the TRO in *Black Lives Matter*. In that case, based on a more complete record and nearly identical circumstances, the Court ruled on the likelihood of success on the merits and irreparable harm. *Black Lives Matter*, (Dkt. # 34). The parties here have not disturbed the Court's previous holding, so it is equally applicable to the July 25, 2020 protest: to the extent that Plaintiffs' First and Fourth Amendment claims overlap with those in *Black Lives Matter*, Plaintiffs have shown a likelihood of success on the merits and irreparable harm.

As the City argues, Plaintiffs' motion does not address their equal protection claim

ORDER – 5

at all.  Of course, Plaintiffs have offered some evidence that they desire or have acquired protective gear to shield themselves from crowd control weapons.  Dkt. ## 5-9.  But they use that evidence to show irreparable harm, stemming from violations of their First and Fourth Amendment.  Dkt. # 23 at 10-12.  They do not use it to show a likelihood of success on the merits or irreparable harm on their equal protection claim.  Thus, as to this claim, Plaintiffs have not met any of the *Winter* factors, and the Court makes no ruling on Plaintiffs' "de facto protest tax" argument.

### B. Balance of Equities and Public Interest

Like the previous two *Winter* factors, the Court already ruled on these two factors in *Black Lives Matter*.  But, unlike the previous two factors, the equities here have shifted.  They now tip sharply in the City's favor and against Plaintiff's request of injunctive relief.

First, the Court already balanced the equities, and Plaintiffs give no reason why the Court should re-weigh them now.  In ruling on the TRO in *Black Lives Matter*, the Court carefully balanced the constitutional right of protestors and the need for SPD to protect the life and safety of the public and officers and the need to protect public and private property.  *Black Lives Matter*, (Dkt. # 34 at 10).  The result was this Court's tailored TRO and later preliminary injunction.  Plaintiffs have not shown why the July 25, 2020 protests require this Court to rebalance the equities or to substitute a tailored preliminary injunction with a blanket ban on crowd control weapons.

Second, when the plaintiffs in *Black Lives Matter* initially moved for a TRO, protesters did not have the protections that they have now.  Since then, however, the City has agreed to a preliminary injunction and to clarifications of the preliminary injunction.  As described above, the preliminary injunction provides protestors with several safeguards.  *See supra* Section II.A.  And the additional clarifications grant further protections to journalists, medics, and legal observers and place a duty on SPD to issue warnings before deploying chemical irritants or projectiles.  *Id.*  Thus, the need for

ORDER – 6

separate and additional injunctive relief is greatly diminished, as an injunction is already in place.

In sum, Plaintiffs have failed to meet their burden to show that the balance of equities tips in their favor or that their requested TRO is in the public interest. These two *Winter* factors are not met.

## V.   CONCLUSION

For the reasons above, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order.  Dkt. # 4.

DATED this 10th day of August, 2020.

*[signature]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 7