1
2
3
4
5

## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

6
7

| | |
|---|---|
| JESSICA BENTON, SHELBY BRYANT, ANNE MARIE CAVANAUGH, ALYSSA GARRISON, AND CLARE THOMAS, Plaintiff, v. CITY OF SEATTLE, Defendant. | No. 2:20-CV-01174- RAJ MOTION TO RECONSIDER MOTION FOR TEMPORARY RESTRAINING ORDER [Dkt 4] **NOTE FOR HEARING**: August 17, 2020 |

8
9
10
11
12
13

14    I.    RELIEF SOUGHT

15    Plaintiffs move this Court to reconsider its MOTION FOR TEMPORARY

16
17    RESTRAINING ORDER, Dkt. #4, pursuant to Local Civil Rule 7(h).

18    The Court denied the motion on August 10, 2020. Dkt. #25.   The

19    instant motion is filed within fourteen days of entry of that order. Local Rule

20    CR 7(h)(2).

21
22
23

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 1

**SMITH LAW, LLC**
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Plaintiffs ask this Court to reconsider its Order finding that Plaintiffs failed to show that (1) the balance of equities tipped in their favor and (2) the requested temporary restraining order was in the public interest.

"Motions for reconsideration are disfavored." Local Rule CR 7(h)(1). "The court will ordinarily deny such motion in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id.*

II.     ASSIGNMENT OF ERROR

With respect to Plaintiff's First and Fourth Amendment claims, the Court found that, like in *Black Lives Matter Seattle-King County v. City of Seattle*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020), the first two *Winter* factors were met: plaintiffs showed a likelihood of success on the merits and irreparable harm. Dkt. #25 at p. 5.

The Court found Plaintiffs did not satisfy the last two *Winter* factors because they failed to establish that (1) the balance of equities tipped in their favor and (2) issuing the temporary restraining order is in the public interest. Dkt. #25 at p. 7.

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 2

**SMITH LAW, LLC**
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

The record does not support the Court's finding that "Plaintiffs have not shown why the July 25, 2020 protests require this Court to rebalance the equities or to substitute a tailored preliminary injunction with a blanket ban on crowd control weapons." Dkt. #25 at p. 6.

Rather, the Court had a well-developed record before it but did not weigh all relevant evidence when assessing the *Winter* factors, resulting in manifest error. The record revealed how SPD misused its crowd control weapons and how that misuse impacted Plaintiffs: rendering them unsafe to continue to exercise political speech, notwithstanding the operative injunction; chilling the exercise of that right such that Plaintiffs sought protective gear as a condition precedent to continue engaging in political speech.

Moreover, the record established that the use of force on July 25 was exceptionally violent – far and apart from other protest actions. Understood in the context of an operative Temporary Restraining Order, then, this fact weighs against the Defendant and for Plaintiffs.

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

III.   ARGUMENT

A. <u>Considering All Relevant Evidence, The Equities Weigh in Favor of, And the Public Interest is Best Served By, Issuance of a Temporary Restraining Order Enjoining Use of CCW.</u>

1) The Evidence Before the Court Underlines That Seattle Police Department's Conduct on July 25 was not a Misstep but a Coordinated Attack in Flagrant Disregard of this Court's Orders. Accordingly, the Public Needs an Order of Cessation, Not Clarification.

The force used by SPD on July 25 was remarkable both in its severity and the boldness with which it was wielded. Moreover, the misuse of CCW was not a matter of simply mistaken or confused officers; it was a coordinated response by SPD. One protester recounted from video 18 flashbangs in a manner of 30 seconds. *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Kyashna Decl., Dkt. #64 at ¶ 19.

Rather than utilize select crowd control weapons with restraint and only in limited circumstances, the Seattle Police Department sent a cascade of each of these contested weapons against protesters in quick succession, refuting any argument that these were necessary for dispersal, when time to disperse and comply not provided. Instead, chaos was sown.

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 4

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

A registered nurse recounted being "repeatedly doused in pepper spray." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Barrett Decl., Dkt. #54 at ¶ 24.  Another protester reported: "I watched SPD use hand-held pepper spray to mace the Wall of Moms as they moved to the front of the crowd." *Black Lives*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Baker Decl., Dkt. #53 at ¶ 23.

More than blast balls and chemical irritants, SPD also launched projectiles indiscriminately: "There were police officers wearing gray coveralls and tactical vests, rather than the normal police uniforms. I believe those officers to be SWAT members. These officers were firing baton rounds—rubber bullets or sponge-tipped bullets—indiscriminately into the crowd." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Matney Decl., Dkt. #74 at ¶ 10.

SPD was not acting in earnest on July 25, nor was it "controlling" a crowd. Instead, officers in the department ambushed residents engaged in political speech: "Then, as we were walking down a hilly street, without any warning, the police came quickly from behind us, rushed us and used flash bangs, blast balls, and pepper spray." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Bruce Decl., Dkt. #56 at ¶ 7.

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 5

**SMITH LAW, LLC**
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Another protester confirmed: "I also saw Seattle police absolutely drench people in pepper spray simply for not moving fast enough." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed August 4, 2020) Thomas Decl., Dkt. #100 at ¶ 19.

These actions were confirmed by an attorney in attendance in her sworn declaration: "Even though people were complying and moving away from the SPD line, officers physically pushed and used flash bangs and chemical irritants on anyone who was not moving as quickly as the officers wanted them to move." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Chen Decl., Dkt. #59 at ¶ 8.

Another protester – a mother – agreed: "I'm still in shock from this experience.  It was appalling.  I have never experienced anything like it.  It seemed like the police wanted to attack us.  They seemed angry and fixated on hurting us; it was like they wanted to provoke a reaction from the crowd so that they could retaliate." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Forest Decl., Dkt. #62 at ¶ 20.

What is more, the use of CCW by SPD on July 25 was exceptional relative to other protests this summer.

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

A community member present for the protests throughout the summer details the marked shift in SPD's approach at this protest on July 25 – a mere 24 hours after a federal order was entered enjoining implementation of the highly-contested CCW ordinance:

"In May and June, I was shot with less-lethal projectiles, tear-gassed, and pepper sprayed by police. I protested outside of the East Precinct every day until police abandoned it and CHOP was created. But Saturday, July 25, 2020 was the most violent and aggressive police treatment of protesters that I have seen at any point since the killing of George Floyd." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed August 4, 2020) Thomas Decl., Dkt. #100 at ¶ 3. "There was so much smoke in the air. The clouds of smoke were three or four times thicker than I'd seen at earlier protests." *Id.* at ¶ 14. "The rate of deployment and the volume of weapons was much greater than I'd seen at earlier protests." *Id.* at ¶ 15.

Another protester, a graduate student, observed unique misuse of power by SPD that day: "But the police violence I experienced and observed on July 25, 2020, was the most I have ever seen and experienced in all the protests I have ever attended. I had never seen or experienced anything like what the SPD did that day." *Black Lives Matter*, No. 2:20-cv-

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 7

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

00887 (W.D. Wash. filed August 4, 2020) Kramer Decl., Dkt. #103 at ¶ 4. "SPD threw grenades into densely packed areas that were already well blanketed in gas or smoke." *Id.* at ¶ 8.

Speaking specifically about SPD's use of blast balls, a community member relayed: "I was terrified of the number of blast balls and explosions going off, which were more than I had seen at any other protest this summer." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Bonafilia Decl., Dkt. #55 at ¶ 8.

A journalist confirmed the uniqueness of July 25: "In the nearly two months that I have been documenting and livestreaming these protests, I have sometimes encountered the effects of pepper spray or blast balls, directed against others. Saturday, July 25, 2020, was different. Other independent media and I were targeted by officers who used painful crowd control weapons against us." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Wieser Decl., Dkt. #73 at ¶ 14.

The observation of the journalist was corroborated by a seasoned protester and mother: "Of all of the protests I have attended this year—and I have attended well over 30—the police violence on July 25, 2020 was the

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 8

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

worst and most indiscriminate." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Kyashna Decl., Dkt. #64 at ¶ 30.

Yet another protester agreed: "On July 25, 2020, the Seattle Police Department ("SPD") unleashed the worst use of force I have seen since the initial demonstrations in May 2020." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Sill Decl., Dkt. #69 at ¶ 3.

After considering all relevant evidence related to bold misuse of CCW a day after the CCW ordinance was enjoined, the Plaintiffs have shown why this Court should modify its tailored preliminary injunction guiding judicious use of these weapons to enjoin their use completely.

2) The Evidence Before the Court Demonstrates that Individuals Who Want to Exercise Political Speech Have Been and Are Being Chilled From that Exercise by The City's Noncompliance with This Court's Orders

The disruptive nature of SPD's indiscriminate force means protesters—like plaintiffs—bear the burden of outfitting themselves to match SPD's dispensation of crowd control weapons to be able to safely engage in political speech on the streets. This burden is real, and it endures.

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 9

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Plaintiffs in *Black Lives Matter* did not provide evidence or argument about the practical inhibition on political speech resulting from SPD's inability to restrain use of these weapons. That case did not provide evidence related to the inhibitive nature of protesting in this city because of SPD and its inability to exercise restraint.

Here, plaintiffs did provide such evidence.

Plaintiff Benton explained how she borrowed chemical goggles to attend on July 25 but found this gear insufficient to protect her from exposure to the chemical agents gratuitously dispersed by SPD. Benton Decl., Dkt. #5 at ¶ 4.

Benton's experience is similar to an that of an attorney present at the protests, who also found goggles insufficient: "There was a lot of gas in the air, and there were flash bangs going off. I had goggles that protected my eyes, but it was impossible to avoid inhaling the gas. It made my face burn. My throat and nose stung badly, triggering coughing fits." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Chen Decl., Dkt. #59 at ¶ 4.

Unlike plaintiffs in *Black Lives Matter*, Benton highlighted that she only remained at the protest for 45 minutes before having to leave "because what

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

I was wearing was insufficient when Seattle Police Department officers deployed noxious gases into the crowd." Benton Decl., Dkt. #5 at ¶ 5.

Later, Benton tried to obtain a gas mask to protect herself. *Id.* at ¶ 8. After searching locally for about three hours, Benton discovered local stores were sold out. *Id.* at ¶ 9. Ultimately, she ordered a gas mask online, but until it arrived she was unable to protest because of her experience on July 25; but Benton would have felt able to protest without a gas mask if the Seattle Police Department were prevented from using chemical agents, projectile guns, and blast balls. *Id.* at ¶ 11.

Plaintiff Thomas has also not been back to a protest since attending July 25 in goggles that proved insufficient. Thomas Decl., Dkt. #7 at ¶ 4. From that experience, Thomas realized she would need to obtain a mask, respirator, and knee pads before returning to protest. *Id.* at ¶ 7. She must forego political speech on timely political issues until she obtains them.

Plaintiff Bryant also missed opportunities to engage in political speech while waiting for protective gear to arrive. Although Bryant wore goggles and an ATV helmet on July 25, she could not return until she obtained a gas mask, respiratory, and knee pads. Bryant Decl., Dkt. #8 at ¶¶ 5-15.

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Bryant missed six protest events because she did not have gear that would protect her from SPD's actions – when a court order did not – on July 25. *Id.* at ¶ 17.

Similarly, Plaintiff Garrison had to forego protesting to protect herself after SPD's misuse of CCW on July 25. Garrison Decl., Dkt. #9 at ¶ 12. She quickly determined the helmet, chemistry goggles, and umbrella she brought for protection were insufficient after witnessing a protester receive a chemical stream directly in the face. *Id.* at ¶ 13. Garrison spent $209 on a respirator to be able to attend protests safely again in Seattle. *Id.* at ¶ 15. While awaiting arrival of this necessary protective gear, Garrison missed two protests she would have attended if she had proper protective gear, or if SPD did not have access to these CCW. *Id.* at ¶¶ 17, 18.

Meanwhile, Plaintiff Cavanaugh is still unable to go protest and exercise political speech—as a 54 year old woman and seasoned activist, Cavanaugh decided she could not return to protest until obtaining protective eye gear after her experiences with SPD on July 25. Cavanaugh Decl., Dkt. #6 at ¶ 4. She struggles with figuring out the right combination

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 12

**SMITH LAW, LLC**
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

of protective gear to obtain to remain safe. *Id.* at ¶ 9. Protesting has become "a pre-planned, extremely involved event." *Id.* at ¶ 10.

The actions of SPD have not provided Plaintiffs with reassurance that they will abide by the Court's order related to restraint in use of these crowd control weapons. Plaintiff Cavanaugh awaits the ability to assemble and protest alongside her community without the need to obtain tactical gear to remain safe. A TRO enjoining possession of these weapons would provide Cavanaugh – and many protesters like her – the assurance that they can protest safely.

Absent from presentation by plaintiffs in *Black Lives Matter*, but present for this Court's consideration, is a chart of sources indicating the range of costs for tactile equipment to be safe from misused crowd control weapons. *See* Dkt. #1, Attachment 1 at p. 2. That resource demonstrates that equipment can range from $300 for a "budget" outfitting, $650 for mid-tier gear; and $2,150 for top-tier gear.

Protesters are not free to exercise their 1st Amendment rights and engage in political speech without this cost-prohibitive gear and the burden of awaiting its arrival in the postal mail because of SPD's continued inability to exercise restraint and abide by court orders.

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Protesters, like plaintiffs, are cobbling together resources to be able to continue to speak for justice in the streets of Seattle, by way of a crowdsourced fundraise for protective gear. Ramon Decl., Dkt. #20 at ¶¶ 2-7. Over $10,000 was generated by folks in the community – during a cataclysmic recession and a pandemic marked by record unemployment – to support the continued ability of individuals to protest for racial justice and timely respond to myriad political issues in the City. *Id.* That money was utilized to purchase protective gear, including gas masks for the OC spray, tactical helmets for the high velocity projectiles, and medical supplies to respond to blast balls utilized against crowds, often landing unpredictably. *Id.* at ¶ 8.

> 3) The Evidence Before the Court Demonstrates that a TRO is in the Public Interest.

Plaintiffs in *Black Lives Matter* initially sought a complete prohibition of any chemical irritant such as CS gas ("tear gas") or OC spray ("pepper spray") and any projectile such as flash-bang grenades, "pepper balls," "blast balls," and rubber bullets. See *Black Lives*, No. 2:20-cv-00887 (W.D. Wash. filed June 9, 2020) Dkt. #6, Attachment 1 at 2. Rather than enjoin use of the weapons, this Court entered a preliminary injunction limiting

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 14

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

use of tear gas against protesters – only if other efforts are "exhaustive and ineffective" and the Chief of Police determines use of tear gas is the "only reasonable alternative available." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed June 12, 2020) Order Granting Motion for Temporary Restraining Order, Dkt. #34 at p. 10-12.

That injunction was in place on July 25. It was read to the officers before every shift. The language was clear; the limitations unmistakable. But notwithstanding the clarity of that injunction and its repetition, Seattle Police Department violated its plain terms with an assaultive front against protesters.

Subsequent to this remarkable show of force, *Black Lives Matter* proposed and entered into a stipulated "clarification" of the preliminary injunction, specific protections for journalists, medics, and legal observers and underscoring the obligation to issue warning before using chemical irritants or projectiles. See *Black Lives Matter,* No. 2:20-cv-00887 (W.D. Wash. filed August 1, 2020) Order Granting Stipulated Clarification of Preliminary Injunction, Dkt. #110.

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

But this contemptuous behavior – and its flagrant nature – underscore that the public needs more than a clarification; it needs this Court to enjoin use of these weapons to ensure public safety.

But as evidenced by the record, the use of force on July 25 by Seattle Police Department—a day after the contentiously-legislated CCW ordinance (Ordinance 119806) was halted by a federal order—was not a simple failure to issue a warning, or inadvertent use of weapons against non-protesters: "There were so many flash bangs and other explosions that I lost count—they were just throwing them indiscriminately." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Kyashna Decl., Dkt. #64 at ¶ 15. Another protestor recounted: "For the next several hours, SPD deployed projectiles and chemical irritants directly at whoever was nearby, including the group of live streamers and corporate media off to the right of the front-facing line, and legal observers who were stationed on the left side and throughout the crowd." *Black Lives Matter*, No. 2:20-cv-00887-RAJ (W.D. Wash. filed August 4, 2020) Vignau Decl., Dkt. #101 at ¶ 14.

Because the problem is not merely clarity of an order but rather wholesale abandonment of it, further clarity and modification of this

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 16

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Court's injunction which still allows for SPD to utilize these munitions fails to protect the community and Plaintiffs, from the chilling effect of continued misuse of CCW on the streets.

The question is not whether the injunction did or does "provide protestors with several safeguards." Order Denying Motion for Temporary Restraining Order, Dkt. #25 at p. 6. It is whether SPD will abide by guidance and exercise restraint with these weapons.  But the answer is already written: they refuse to, even when under a federal microscope.

The Court found plaintiffs here have *more* protections than plaintiffs who initiated the *Black Lives Matter* suit in June, and accordingly, "the need for separate and additional injunctive relief is greatly diminished" because "an injunction is already in place." Order Denying Motion for Temporary Restraining Order, Dkt. #25 at p. 6-7.

But what comfort does an injunction provide a person gassed on the street in direct violation of this Court's operative order on July 25? What confidence does a protester have exercising their 1st Amendment rights that such deviation from a clear judicial order will not occur again?

This was not a misinterpretation. It was an offensive against the people sustaining the fight against racial injustice and for defunding of

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

police in the streets of Seattle. Emboldened as the "Ignored Majority" finally taking back what the city council tried to—and did—legislate away. *See* Reply to Defendant's Response, Dkt. #23 at p. 5.

Community members have detailed at length to this Court how it is that these weapons impact them as a group, when wielded to attack and not "control": "At that point, the front line of police began pepper spraying people caught at the rear of the crowd. The spray drifted south with the wind to where I was, and I felt it begin to sting my eyes and irritate my lungs—even though I was twenty to thirty feet removed from the individuals being targeted." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Oberstadt Decl., Dkt. #67 at ¶ 6; "I was struck by how difficult it was to achieve a "safe" distance out of the range of the flash bang. There were times that we were standing at least 100 feet back from the front line of protesters and we were still in range of being hit. Not only are police launching or throwing flash bangs far and wide, the flash bangs are also incredibly unpredictable." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed August 4, 2020) Sterner Decl., Dkt. #97 at ¶ 18.

4) New Facts Further Underscore Need for an Order Enjoining Possession and Use of CCW at Protests.

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 18

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

The Seattle Police Department remains undeterred in its pattern of assaultive behavior towards protesters speaking against police brutality. This is true despite long-standing federal oversight, a recent injunction guiding use of the weapons, and on the heels of a civil rights lawsuit for excessive use of force initiated in June.

For example, Seattle Police Department officers on August 14, 2020, attacked protesters participating in the "car brigade" – an adaption of protesters to protect themselves after being targeted by vehicles while protesting. An SPD officer smashes a window with a driver inside; the tires of the vehicle are slashed. The video is available at https://drive.google.com/file/d/1qlp3aVik6B8JuElZfN8YxFYhpSzbeL0S/view.

Two days prior, the Seattle Police Department assaulted protesters with a vehicle. That incident is captured on video, and the officer involved speaks to a protester afterwards: https://drive.google.com/file/d/1UHF7xpkAI251Oo2Fb0M1-mhYLv81MkJ1/view.

These most recent bombastic explosions of power have spurred a call from activists and protesters alike to City Council members to denounce this

and other recent misconduct by Seattle Police Department. *See, e.g.* "Unacceptable Escalation of Violence by The Seattle Police Department – Evening of August 12" template "write-in" letter, available at https://docs.google.com/document/d/1jfNvnMCAtsNC7PHQow-BIWKaFW7tutKPGYO33zqmRmk/edit.

While undersigned was preparing this briefing, yet another instance of SPD's antagonism came to light. A video from a police response to a call at Cal Anderson park, formerly where CHOP existed, shows a member of the community using a cane and calling a Seattle Police Department officer a "fucking bitch."  (While such language may be scathing in a legal brief, it is par for the course in the protests calling for SPD's defunding, and, in fact, much more inflammatory language is used.).

What does the Seattle Police Department officer do in response? She pushes the man with a cane, squares up to fight him, and then he is ultimately tackled.  Four screenshots of that video are included below at Figures 1, 2, 3 and 4. The video is available at: https://twitter.com/spekulation/status/1295169946314391552.

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 20

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

*Figure 1*



*Figure 2*



*Figure 3*



MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 21

**SMITH LAW, LLC**
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

*Figure 4*



On August 6, 2020, Judge Robart found good cause to extend the TRO enjoining implementation of the CCW until September 18, 2020, "so that the court can preserve the status quo and provide the relevant stakeholders with sufficient time to comment on the CCW." *United States v. City of Seattle*, No. 2:12-cv-01282 (W.D. Wash. Filed August 6, 2020) Order on Joint Status Report, Dkt. #634 at p. 2.

The reports commenting on the CCW ordinance were submitted on August 14 and they underscore a material difference in how SPD responds to protesters engaging in police-related protests compared to other topical protests.

The Community Police Commission (CPC), one of the stakeholders, noted as a threshold matter in its report: "we chose to use the term 'Crowd Control,' to model the language used within the Ordinance. However, we

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 22

**SMITH LAW, LLC**
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

feel it is important to highlight the actions that lead to the creation of the Ordinance were more akin to protest suppression." SEATTLE COMMUNITY POLICE COMMISSION, CPC RECOMMENDATIONS ON SEATTLE'S CROWD CONTROL WEAPONS BAN 2 (2020), available at https://seattlecpc.files.wordpress.com/2020/08/cpc-recommendations-on-crowd-control-weapons-ban.pdf.

The report itself underscores the eristic nature of this term when the unruly crowd to "control" is not street protesters but instead an entire Department: of taxpayer funded, weapon-wielding police.

The CPC report noted that just over 25% of protests have a police monitoring presence. SEATTLE COMMUNITY POLICE COMMISSION, CPC RECOMMENDATIONS ON SEATTLE'S CROWD CONTROL WEAPONS BAN 10 (2020)("Seattle boats an average of 300+ demonstrations each year, with approximately 80 of those mentioned being monitored by police."). It highlighted that "SPD's presence during protests was perceived by community as an intimidation tactic with a looming sense of threatening force, which was actualized." SEATTLE COMMUNITY POLICE COMMISSION, CPC RECOMMENDATIONS ON SEATTLE'S CROWD CONTROL WEAPONS BAN 10 (2020). The CPC noted that in recent months, SPD "has attended a majority of

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

demonstrations that are specifically rallying against police violence and brutality." Seattle Community Police Commission, CPC Recommendations on Seattle's Crowd Control Weapons Ban 10 (2020).

The CPC further identified the disparity between SPD's "crowd management" tactics at protests for racial justice or against police brutality as opposed to large crowds of sports fans: "Nor have we seen the same level of response after Seahawk or Sounder championship parades." Seattle Community Police Commission, CPC Recommendations on Seattle's Crowd Control Weapons Ban 2 (2020).

The Office of Police Accountability, another stakeholder, indicated the distinction between the current protests topically as it relates to policing and community: "The recent protests in Seattle have been about police misconduct—not, for example, women's rights or the environment—which has posed a unique challenge for SPD. During protests, the police are generally responsible for protecting the public, preserving property, and mitigating traffic impacts. But "when the protests are police-focused, they must also avoid escalating existing tensions with demonstrators unnecessarily." *U.S. v. Seattle*, No. 2:12-cv-01282 (W.D. Wash. filed August 15, 2020) Office of Police Accountability Report, Dkt. #636 at p. 11.

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 24

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

The Office of the Inspector General, the final of the oversight triad, acknowledge the phenomenon insofar as it recommended a disparity analysis of SPD response to current and past demonstrations. *U.S. v. Seattle*, No. 2:12-cv-01282 (W.D. Wash. filed August 15, 2020) Office of Inspector General Report, Dkt. #637 at p. 35.

## IV.    CONCLUSION

The Seattle Police Department has a pattern of indiscriminate and reckless use of CCW weapons.  The misuse of CCW generated this Court's initial TRO in June. That governing order was in place on July 25.  The evidence before this Court from July 25 is simply incompatible with an earnest attempt by the Department to conduct themselves in accordance with this Court's June TRO.

The TRO which permitted use of CCW did not protect the community and protesters engaged in political speech.

On balance, and considering the evidence, a "stipulated clarification" of this Court's order is insufficient to reign in SPD's misconduct and to protect residents of the community – both their safety, and their exercise of constitutional rights.

MOTION TO RECONSIDER MOTION FOR
TEMPORARY RESTRAINING ORDER | 25

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664

Accordingly, this Court should reconsider Plaintiff's Motion for a Temporary Restraining Order and grant relief as sought here, and as initially requested by plaintiffs in *Black Lives Matter*.

The law is ill-equipped to handle the discrete violations occurring daily at the hands of SPD and to address those harms. A TRO should provide the injunctive relief necessary to assure robust First Amendment protections and to prevent the decidedly irreparable harm that falls on protesters seeking to continue to engage in political speech and assembly with their community on the streets but unable to do so.

_____
J. Talitha Hazelton
WSBA NO. | 52460
*Counsel for Plaintiffs*

SMITH LAW, LLC
4301 NE 4th St. PO Box 2767
Renton, WA 98059
Phone: (206) 715-4248
Fax: (250) 900-2664