The Honorable Richard A. Jones
Note on Motion Calendar: October 23, 2020

**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| JESSICA BENTON, SHELBY BRYANT, ANNE MARIE CAVANAUGH, AND ALYSSA GARRISON, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SEATTLE, <br><br> Defendant | Case No. 2:20-cv-01174-RAJ <br><br> **MOTION FOR PRELIMINARY INJUNCTION** |

## I.   INTRODUCTION

This motion for preliminary injunction is an action to defend the First and Fourth Amendment rights of protesters demonstrating against police brutality and in support of defunding police in the City of Seattle.

A governing injunction issued by this Court in *Black Lives Matter Seattle-KC* allowing use of CCWs under very limited instances has afforded too much discretion to individual officers and insufficient meaningful oversight as evidenced by conduct of the Seattle Police Department

MOTION FOR PRELIMINARY INJUNCTION - 1

2:20-cv-01174-RAJ

**SMITH LAW, LLC**
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

(SPD) on July 25, August 26, September 7, September 22, and September 26.

Stated bluntly, mandated discretion has failed to protect community members and ensure political speech without indiscriminate attacks by individual SPD officers wielding CCWs against the community protesting its very existence.

Irreparable harm will result without a preliminary injunction enjoining use of the CCWs completely.

## II. FACTUAL BACKGROUND

History of Court Intervention into SPD's Use of Force

For nearly a decade, SPD has operated under a federal consent decree after the Department of Justice (DOJ) found "a pattern or practice of constitutional violations regarding the use of force that result from structural problems, as well as serious concerns about biased policing." *See* Department of Justice, Investigation of the Seattle Police Department (2011), *available at* https://www.justice.gov/sites/default/files/crt/legacy/2011/12/16/spd_findletter_12-16-11.pdf

In the summer of 2017, SPD Officers Steven McNew and Jason Anderson shot 30-year old Black resident and mother Charleena Lyles seven times after she called for police assistance, killing her.

Three months later, the City asked the court to find it in compliance and begin the two-year period which would culminate in approval to terminate the consent decree. *U.S. v. City of Seattle*, 2:12-cv-01282-JLR (W.D. Wash filed Aug. 29, 2017) (Dkt. # 419). In January of 2018, the Court found the City in compliance. *U.S. v. City of Seattle*, 2:12-cv-01282-JLR (W.D. Wash. filed Jan. 10, 2018) (Dkt. #439).

MOTION FOR PRELIMINARY INJUNCTION - 2

2:20-cv-01174-RAJ

**SMITH LAW, LLC**
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

Almost a year later, the court questioned whether the City and SPD could remain in full and effective compliance with the consent decree after a review board decided to reinstate an officer who had violated three provisions of use-of-force policies when he punched a handcuffed woman in the face while she was sitting in a patrol car. *U.S. v. City of Seattle*, 2:12-cv-01282-JLR (W.D. Wash. filed Dec. 3, 2018) (Dkt. # 504).

On May 7, 2020, the City of Seattle filed a motion to terminate independent monitoring, without addressing the fact that it was out of compliance and had not been in full compliance for the requisite two-year period. *U.S. v. City of Seattle*, 2:12-cv-01282-JLR (W.D. Wash. filed May 7, 2020) (Dkt. # 611).

A month later, the Office of Police Accountability received 12,000 complaints about SPD's response to protesters in the wake of George Floyd's extrajudicial killing at the beginning of the summer.

Shortly after, City Attorney Pete Holmes withdrew the motion to terminate independent monitoring. *U.S. v. City of Seattle*, 2:12-cv-01282-JLR (W.D. Wash. filed June 4, 2020) (Dkt. # 621).

<u>Conduct of Seattle Police Department While Subject to Injunction in Black Lives Matter King County-Seattle</u>

On July 25, 2020, Plaintiffs and protesters like them attended a protest in Seattle where SPD was present.

At that protest, Plaintiffs and other residents were subjected to indiscriminate use 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray by SPD.

The force used by SPD on July 25 was remarkable both in its severity and the boldness with which it was wielded. Moreover, the misuse of CCWs was not a matter of simply mistaken or confused officers; it was a coordinated response by SPD. One protester

MOTION FOR PRELIMINARY INJUNCTION - 3

2:20-cv-01174-RAJ

**SMITH LAW, LLC**
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

recounted from video 18 flashbangs in a manner of 30 seconds. *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Kyashna Decl., Dkt. #64 at ¶ 19.

Rather than utilize select crowd control weapons with restraint and only in limited circumstances, SPD sent a cascade of each of these contested weapons against protesters in quick succession, refuting any argument that these were necessary for dispersal, when time to disperse and comply was not provided. Instead, chaos was sown.

A registered nurse recounted being "repeatedly doused in pepper spray." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Barrett Decl., Dkt. #54 at ¶ 24. Another protester reported: "I watched SPD use hand-held pepper spray to mace the Wall of Moms as they moved to the front of the crowd." *Black Lives*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Baker Decl., Dkt. #53 at ¶ 23.

More than blast balls and chemical irritants, SPD also launched projectiles indiscriminately: "There were police officers wearing gray coveralls and tactical vests, rather than the normal police uniforms. I believe those officers to be SWAT members. These officers were firing baton rounds—rubber bullets or sponge-tipped bullets—indiscriminately into the crowd." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Matney Decl., Dkt. #74 at ¶ 10.

SPD was not acting in earnest on July 25, nor was it "controlling" a crowd. Instead, officers in the department ambushed residents engaged in political speech: "Then, as we were walking down a hilly street, without any warning, the police came quickly from behind us, rushed us and used flash bangs, blast balls, and pepper spray." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Bruce Decl., Dkt. #56 at ¶ 7.

MOTION FOR PRELIMINARY INJUNCTION - 4

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

Another protester confirmed: "I also saw Seattle police absolutely drench people in pepper spray simply for not moving fast enough." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed August 4, 2020) Thomas Decl., Dkt. #100 at ¶ 19.

These actions were confirmed by an attorney in attendance in her sworn declaration: "Even though people were complying and moving away from the SPD line, officers physically pushed and used flash bangs and chemical irritants on anyone who was not moving as quickly as the officers wanted them to move." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Chen Decl., Dkt. #59 at ¶ 8.

Another protester – a mother – agreed: "I'm still in shock from this experience. It was appalling. I have never experienced anything like it. It seemed like the police wanted to attack us. They seemed angry and fixated on hurting us; it was like they wanted to provoke a reaction from the crowd so that they could retaliate." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Forest Decl., Dkt. #62 at ¶ 20.

What is more, the use of CCWs by SPD on July 25 was exceptional relative to other protests this summer.

A community member present for the protests throughout the summer details the marked shift in SPD's approach at this protest on July 25 – a mere 24 hours after a federal order was entered enjoining implementation of the highly-contested CCWs ordinance:

"In May and June, I was shot with less-lethal projectiles, tear-gassed, and pepper sprayed by police. I protested outside of the East Precinct every day until police abandoned it and CHOP was created. But Saturday, July 25, 2020 was the most violent and aggressive police treatment of protesters that I have seen at any point since the killing of George Floyd." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed August 4, 2020) Thomas Decl.,

MOTION FOR PRELIMINARY INJUNCTION - 5

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

Dkt. #100 at ¶ 3. "There was so much smoke in the air. The clouds of smoke were three or four times thicker than I'd seen at earlier protests." *Id.* at ¶ 14. "The rate of deployment and the volume of weapons was much greater than I'd seen at earlier protests." *Id.* at ¶ 15.

Another protester, a graduate student, observed unique misuse of power by SPD that day: "But the police violence I experienced and observed on July 25, 2020, was the most I have ever seen and experienced in all the protests I have ever attended. I had never seen or experienced anything like what the SPD did that day." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed August 4, 2020) Kramer Decl., Dkt. #103 at ¶ 4. "SPD threw grenades into densely packed areas that were already well blanketed in gas or smoke." *Id.* at ¶ 8.

Speaking specifically about SPD's use of blast balls, a community member relayed: "I was terrified of the number of blast balls and explosions going off, which were more than I had seen at any other protest this summer." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Bonafilia Decl., Dkt. #55 at ¶ 8.

A journalist confirmed the uniqueness of July 25: "In the nearly two months that I have been documenting and livestreaming these protests, I have sometimes encountered the effects of pepper spray or blast balls, directed against others. Saturday, July 25, 2020, was different. Other independent media and I were targeted by officers who used painful crowd control weapons against us." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Wieser Decl., Dkt. #73 at ¶ 14.

The observation of the journalist was corroborated by a seasoned protester and mother: "Of all of the protests I have attended this year—and I have attended well over 30—the police violence on July 25, 2020 was the worst and most indiscriminate." *Black Lives*

MOTION FOR PRELIMINARY INJUNCTION - 6

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

*Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Kyashna Decl., Dkt. #64 at ¶ 30.

Yet another protester agreed: "On July 25, 2020, the Seattle Police Department ("SPD") unleashed the worst use of force I have seen since the initial demonstrations in May 2020." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Sill Decl., Dkt. #69 at ¶ 3.

<u>Conduct Subsequent to July 25, 2020</u>

On July 27, the Plaintiffs in *Black Lives Matter* moved for contempt, arguing:

> In many ways, what happened on July 25 was worse than the events that led to the Court's June 12 order. In a vengeful outburst, the SPD deliberately targeted peaceful protesters, medics attending to those protesters, journalists chronicling those protesters, and legal observers sent to ensure those protesters' rights are protected. This conduct is wrong even in the absence of a court order. But here, it is especially troubling given the Court's clear guidance that peaceful protesters must not be targeted, and that projectiles cannot be deployed indiscriminately into the crowd. The City willfully violated the Court's order, andshould be held in contempt. Plaintiffs' proposed order seeks not only to clarify the injunction already in place but also to sanction the City for these blatant violations. The City must be held accountable.

*Black Lives Matter*, No. 2:20-cv-00887-RAJ (W.D. Wash. filed July 27, 2020) (Dkt. # 51).

A month after the City was put on notice of SPD's misconduct (and this Court entered a stipulated clarified injunction), the misuse of SPD continued:

On August 26th, in response to a vigil for those who have been killed at protests, dozens of SPD, WSP, and SWAT officers arrived. *See Salisbury Declaration*, at ¶ 4. Officers pushed the crowd down the street and deployed blast balls and mace multiple times. *See id.*

MOTION FOR PRELIMINARY INJUNCTION - 7

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

Again, on September 7th, at a march to the Seattle Police Officers Guild (SPOG) headquarters, SPD officers deployed blast balls as they pushed protestors for over 2 miles. *See Declaration of Counsel*, at ¶ 3.

On September 22nd, several SPD vehicles responded to a small group of protestors outside the East Precinct. *See Kulik Declaration,* at ¶ 3. An officer deployed a blast ball at the crowd as they were walking away. *See id.*

On September 23rd, SPD officers deployed OC spray and blast balls at a group near the East Precinct. *See* Smith Declaration at ¶ 3. One officer was captured on film running over a protestor's neck with their bicycle. This resulted in a call for a criminal investigation from the Office of Police Accountability (OPA). *See* Office of Police Accountability, *OPA Requests Criminal Investigation After Officer Rolls Bicycle Over Person, available at:* http://www.seattle.gov/Documents/Departments/OPA/PressReleases/09-24-20_OPA-Requests-Criminal-Investigation.pdf.

Most recently, on September 26th, at a nightly demonstration, a protester was hit directly in the head with a flash bang. Having viewed the increased SPD violence the preceding week, the protester fortuitously wore a helmet, protecting them from impact. *See* Slansky Declaration.

### III.   ARGUMENT

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Plaintiffs who seek a preliminary injunction must show: (1) that Plaintiffs are "likely to succeed on the merits," (2) that Plaintiffs are "likely to suffer irreparable harm in the absence

MOTION FOR PRELIMINARY INJUNCTION - 8

2:20-cv-01174-RAJ

**SMITH LAW, LLC**
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

of preliminary relief," (3) "that the balance of equities tips in [Plaintiffs'] favor," and 4) "that an injunction is in the public interest." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013) (alteration in original) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). Although not dispositive by itself, the first of these factors—likelihood of success on the merits—is the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). However, "[h]ow strong a claim on the merits is enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir. 2011) (quoting *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). Thus, while Plaintiff's claims on the merits are extremely strong, temporary relief would be appropriate even if they were less clearly meritorious given how sharply the balance of harms tips in Plaintiffs' favor. *See Shell Offshore*, 709 F.3d at 1291.

**1. The Plaintiffs are likely to succeed on the merits.**

This Court has previously reviewed plaintiffs' Motion for a Temporary Restraining Order and found this *Winter* factor - the "most important" of the four - satisfied. Dkt. # 25.

"[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014). "Organized political protest is a form of 'classically political speech.'" *Boos v. Barry*, 485 U.S. 312, 318 (1988).

Criticism of the government is no less protected when it is angry or even inflammatory. *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (Free speech "may indeed best

MOTION FOR PRELIMINARY INJUNCTION - 9

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

of preliminary relief," (3) "that the balance of equities tips in [Plaintiffs'] favor," and 4) "that an injunction is in the public interest." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013) (alteration in original) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). Although not dispositive by itself, the first of these factors—likelihood of success on the merits—is the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). However, "[h]ow strong a claim on the merits is enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir. 2011) (quoting *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). Thus, while Plaintiff's claims on the merits are extremely strong, temporary relief would be appropriate even if they were less clearly meritorious given how sharply the balance of harms tips in Plaintiffs' favor. *See Shell Offshore*, 709 F.3d at 1291.

**1. The Plaintiffs are likely to succeed on the merits.**

This Court has previously reviewed plaintiffs' Motion for a Temporary Restraining Order and found this *Winter* factor - the "most important" of the four - satisfied. Dkt. # 25.

"[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014). "Organized political protest is a form of 'classically political speech.'" *Boos v. Barry*, 485 U.S. 312, 318 (1988).

Criticism of the government is no less protected when it is angry or even inflammatory. *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (Free speech "may indeed best

MOTION FOR PRELIMINARY INJUNCTION - 9

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.").

By wielding CCWs against protesters writ large--lobbing a blast ball into a crowd; spraying CS chemicals across a line of protesters--SPD's express purpose has been to "disperse" the protest—i.e., to end it. *Cf. Lacey v. Maricopa Cty.*, 693 F.3d 896, 917 (9th Cir. 2012) ("It is hard to conceive of a more direct assault on the First Amendment than public officials ordering the immediate arrests of their critics.").

Blocking or dispersing a protest "before demonstrators have acted illegally or before the demonstration poses a clear and present danger is presumptively a First Amendment violation." *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996) (citing *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180-81 (1968)).

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005).

The effect of SPD's use of less-lethal force against protesters has had the purpose and effect of suppressing large protests and assemblies. The City's policy, practice, and custom of using less-lethal weapons is not a reasonable regulation of First Amendment protected activity.

The City's actions also violate the Fourth Amendment prohibition on excessive force, and the First Amendment rights at stake strengthen that claim. The City's the use of less-lethal weapons against protestors as a means of "crowd control," absent any imminent and specific threat to public safety, is inherently excessive, and violates the Fourth Amendment.

MOTION FOR PRELIMINARY INJUNCTION - 10

2:20-cv-01174-RAJ

**SMITH LAW, LLC**
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

The Fourth Amendment guarantees the right to be free from excessive force. Courts analyze claims of excessive force under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Applying these factors, the Ninth Circuit has held that "firing projectiles, including pepper balls, in the direction of individuals suspected of, at most, minor crimes, who posed no threat to the officers or others, and who engaged in only passive resistance," is unreasonable. *Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012) (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1284-95 (9th Cir. 2001)).

In *Nelson*, the Ninth Circuit found that "[a]lthough the officers encountered individuals at various points . . . who threw bottles or other debris at them," that did not justify the use of force against Plaintiff or others around him when the officers "did not see anyone in [Plaintiff's] group throwing bottlers or engaging in any other threatening or dangerous behavior." *Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012).

**2. The Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief.**

This Court has previously reviewed plaintiffs' Motion for a Temporary Restraining Order and found this *Winter* factor satisfied. Dkt. # 25.

Plaintiffs are likely to suffer irreparable harm if an injunction does not issue. It is well-established that the loss of constitutional rights qualifies as irreparable harm, particularly where the First Amendment is concerned. As Plaintiffs' testimonial evidence confirms, the SPD's actions have the effect of blocking demonstrators from fully exercising their First Amendment rights. The accompanying declarations demonstrate that the City's actions chill Plaintiffs' prospective exercise of their rights.

MOTION FOR PRELIMINARY INJUNCTION - 11

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

Plaintiffs will suffer immediate and irreparable injury if the City is permitted to continue to violate their civil rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (A "colorable First Amendment claim" is "irreparable injury sufficient to merit the grant of relief.") (internal quotation marks omitted). Because constitutional violations can often not be adequately remedied through damages, the Ninth Circuit does "not require a strong showing of irreparable harm for constitutional injuries." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). Irreparable injury has already occurred in the streets of Seattle through interrupted speech, suppressed speech, deterred speech, and both physical and emotional injury caused by excessive force by SPD on peaceful protestors. Peaceful protestors are leaving Seattle demonstrations out of fear for their personal safety and for the physical injuries sustained at the hands of SPD in exercising their First Amendment rights.

**3. The balance of equities and public interest weigh in favor of an injunction.**
The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Since this case involves a government actor, the balance of equities factor merges with the fourth factor, public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

This balance tilts sharply in Plaintiffs' favor because the balance of equities and public interest always favor "prevent[ing] the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotation marks omitted). "The fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips

MOTION FOR PRELIMINARY INJUNCTION - 12

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

sharply in [Plaintiffs'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotation marks omitted). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage Ass'n v. City & Cty. of S.F.,* 916 F.3d 749, 758 (9th Cir. 2019) (quoting *Melendres*, 695 F.3d at 1002 (internal quotation marks omitted)).

Plaintiffs have shown irreparable and concrete harm because SPD's actions block their ability to exercise their First Amendments rights and violate their Fourth Amendment freedom from excessive force. By contrast, the relief Plaintiffs seek does little, if any, harm to the City, which can and should pursue less restrictive and more narrowly tailored tactics.

The disruptive nature of SPD's indiscriminate force means protesters—like plaintiffs—bear the burden of outfitting themselves to match SPD's dispensation of crowd control weapons to be able to safely engage in political speech on the streets. This burden is real, and it endures.

Protesters, like plaintiffs, are cobbling together resources to be able to continue to speak for justice in the streets of Seattle, by way of a crowdsourced fundraise for protective gear. Ramon Decl., Dkt. #20 at ¶¶ 2-7. Over $10,000 was generated by community members to support the continued ability of individuals to protest police brutality and support the movement for Black lives. *Id.* That money was utilized to purchase protective gear, including gas masks for the OC spray, tactical helmets for the high velocity projectiles, and medical supplies to respond to blast balls utilized against crowds, often landing unpredictably. *Id.* at ¶ 8.

But as evidenced by the record, the use of force on July 25 by Seattle Police Department—a day after the contentiously-legislated CCW ordinance (Ordinance 119806)

MOTION FOR PRELIMINARY INJUNCTION - 13

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

was halted by a federal order—was not a simple failure to issue a warning, or inadvertent use of weapons against non-protesters: "There were so many flash bangs and other explosions that I lost count—they were just throwing them indiscriminately." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Kyashna Decl., Dkt. #64 at ¶ 15. Another protestor recounted: "For the next several hours, SPD deployed projectiles and chemical irritants directly at whoever was nearby, including the group of live streamers and corporate media off to the right of the front-facing line, and legal observers who were stationed on the left side and throughout the crowd." *Black Lives Matter*, No. 2:20-cv-00887-RAJ (W.D. Wash. filed August 4, 2020) Vignau Decl., Dkt. #101 at ¶ 14.

Because the problem is not merely clarity of an order but rather wholesale abandonment of it, further clarity and modification of this Court's injunction, which still allows for SPD to utilize these munitions, fails to protect the community and Plaintiffs from the chilling effect of continued misuse of CCW on the streets.

Community members have detailed at length to this Court how it is that these weapons impact them as a group, when wielded to attack and not "control":  "At that point, the front line of police began pepper spraying people caught at the rear of the crowd.  The spray drifted south with the wind to where I was, and I felt it begin to sting my eyes and irritate my lungs—even though I was twenty to thirty feet removed from the individuals being targeted." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed July 27, 2020) Oberstadt Decl., Dkt. #67 at ¶ 6; "I was struck by how difficult it was to achieve a "safe" distance out of the range of the flash bang. There were times that we were standing at least 100 feet back from the front line of protesters and we were still in range of being hit. Not only are police launching or throwing flash bangs far and wide, the flash bangs are also

MOTION FOR PRELIMINARY INJUNCTION - 14

2:20-cv-01174-RAJ

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

incredibly unpredictable." *Black Lives Matter*, No. 2:20-cv-00887 (W.D. Wash. filed August 4, 2020) Sterner Decl., Dkt. # 97 at ¶ 18.

The Seattle Police Department has a pattern of indiscriminate and reckless use of CCWs. The misuse of CCWs generated this Court's initial TRO in June. It continued with such an order in place on July 25.

The injunction allowing for continued possession of CCWs did not protect the community and protesters engaged in lawful, constitutional exercise of political speech, protesting police brutality in the movement for Black lives.

Because the misconduct alleged here is not anomalous, or the result of exigent circumstances, but par for the course, there is a strong likelihood of future constitutional violations by the City. The impact of SPD having the CCWs in their arsenal is to chill protesters from returning for want of gear or for fear of continued misuse of weapons at protests related to but governed by police.

## IV.   CONCLUSION

This Court should issue a preliminary injunction an order preliminarily enjoining the City and all agencies under its direction and from which it has requested assistance with regard to the protests from further violating the First and Fourth Amendment rights of Plaintiffs by ordering cessation in use and possession of 40 mm launchers, blast balls, CS gas, and oleoresin capsicum ("OC") spray.

DATED this 29 day of September, 2020.

**SMITH LAW, LLC**

MOTION FOR PRELIMINARY INJUNCTION - 15

2:20-cv-01174-RAJ

**SMITH LAW, LLC**
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

By   */s/ Talitha Hazelton*
J. Talitha Hazelton | WSBA No. 52460
4301 NE 4th St.
PO BOX 2767
Renton, WA 98058
talitha@thesmithlaw.com
Tel: (206) 715-4248
Fax: (206) 900-2664
*Attorney for Defendant*

MOTION FOR PRELIMINARY INJUNCTION - 16

2:20-cv-01174-RAJ

**SMITH LAW, LLC**
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
Tel: (206) 715-4248
Fax: (206) 900-2664

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Dated this 29 day of September 2020 at Seattle, Washington.

_____
J. Talitha Hazelton

CERTIFICATE OF SERVICE

SMITH LAW, LLC
4301 NE 4th St.
PO Box 2767
Renton, WA 98059
sade@thesmithlaw.com
Tel: (206) 715-4248
Fax: (206) 900-2664