Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JESSICA BENTON, SHELTY BRYANT,
ANNE MARIE CAVANAUGH, and ALYSSA
GARRISON,

                  Plaintiffs,

      v.

CITY OF SEATTLE,

                  Defendant.

No.    2:20-CV-01174 RAJ

THE CITY OF SEATTLE'S RESPONSE
IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION AND REQUEST FOR
ENTRY OF A STAY

The City of Seattle ("City") respectfully requests this Court deny Plaintiffs' Motion for Entry of a Preliminary Injunction. Additionally, the City respectfully requests, pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, that this court stay all proceedings (including discovery, pretrial, trial and trial related deadlines) in this action pending disposition of *Black Lives Matter et al. v. City of Seattle,* 2:20-cv-00887. The City states the following in support:

## INTRODUCTION

For the third time, Plaintiffs seek a total ban on the City's use of crowd control weapons ("CCWs"). They seek this ban despite this Court's Orders establishing appropriate parameters for

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 1 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

the use of CCWs, a different federal Court's stay on a City Ordinance banning use of CCWs, this Court's two prior rulings denying them a TRO under these circumstances, and without making any of the required showings that the extraordinary relief sought is warranted. It is clear Plaintiffs desire to stop the use of CCWs, no matter the circumstances, and it is equally clear that such a ban is neither constitutionally required nor an appropriate balancing of the equities.

Similarly, the Plaintiffs wish to ignore that the City continues to support daily demonstrations in Seattle nearing six straight months and, at the vast majority of those events, members of the public demonstrate freely and peacefully advocate for change and accountability, often without any police presence. Even in instances where police have been present, the vast majority of demonstrations have not had any uses of force or CCWs. Rather than police presence being tied to speech content (which Plaintiffs articulate as against police brutality and in support of defunding Seattle police), police attendance at a demonstration event is based on the potential for violence at a specific protest, among other factors. The concern about violence at some of the demonstrations is not an idle one, as some events have included members of the demonstration crowd committing acts of significant property damage, fires, and violence against police and the public.

Plaintiffs rely on evidence they submitted in support of their motion for entry of a temporary restraining order ("TRO") and on declarations of individuals that attended demonstration events on August 26, September 7, September 22, September 23, and September 26. (Dkts. 37-42). Plaintiffs themselves have not attended (or been injured from) any demonstration events since this Court's denial of Plaintiffs' motion for TRO. (*See* Dkts. 32-35). Plaintiffs also do not actually complain that the City violated the terms of the preliminary injunction in *Black Lives Matter v. City of Seattle*, 20-cv-887. Rather, Plaintiffs complain that CCWs were used at demonstration events by officers – and assert the use of those devices is unacceptable. This Court has weighed the necessary balance of use

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ENTRY OF A STAY - 2 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

of CCWs with the need to ensure public safety. Plaintiffs declarations take issue with this Court's prior rulings. (Dkts. 32-35). However, despite Plaintiffs' objections, their motion and supporting declarations do not tip the scales of this delicate balancing. Plaintiffs fail to establish that they are entitled to a preliminary injunction.

## PROCEDURAL BACKGROUND AND FACTUAL CONTEXT

On August 3, 2020, Plaintiffs filed a Complaint seeking injunctive relief. (Dkt. 1). Plaintiffs also sought a temporary restraining order ("TRO") that is the subject of this Response. (Dkt. 4). After briefing, on August 10, 2020, this Court denied the Plaintiffs' motion for entry of a TRO, noting that the balance of equities and the public interest tip in favor of the City. (Dkt. 25). Plaintiff moved to reconsider the denial of the TRO, which this Court denied on August 18, 2020. (Dkt. 27). Plaintiffs filed a motion for leave to amend their complaint – dismissing their equal protection claim and Plaintiff Thomas. (Dkt. 42 and 42-1). The City responded that it did not object to amendment. (Dkt. 44). Plaintiffs now seek a preliminary injunction. Further, the City indicated in the Joint Status Report (Dkt. 29) that it intended to seek a stay of proceedings and restated that intention to Plaintiffs' counsel today, October 19, 2020 via e-mail and an attempted phone call. (Sharifi Dec. ¶ 4).

I.  <u>Developments since denial of TRO</u>

Since the denial of the Plaintiffs' TRO in this case, Judge Robart entered a stipulated preliminary injunction in *United States v. City of Seattle,* 12-cv-1282 (Dkt. 647). Judge Robart's TRO language ordered that abrupt changes in expectations for officers' access to crowd control weapons "presents risks to both the officers' and the public's safety." (*Id.* at Dkt. 630, p. 7). The parties later stipulated and the Judge ordered that the City's CCW Ordinance undergo the policy review process set forth in Paragraph 177 through 181 of the Consent Decree. *See* 12-cv-1282 (Dkt. 3-1). Judge

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 3 (2:20-cv-01174 RAJ)

Robart's preliminary injunction preventing implementation of a crowd control weapons ban is still in effect.

In *Black Lives Matter et al. v. City of Seattle,* 20-cv-00887, this Court entered an Order further clarifying the Court's preliminary injunction, which is still in effect. 20-cv-887, (Dkt. 110). Currently, the parties in that case are scheduling contempt briefing arising out of three of the same four events complained of in Plaintiffs' Motion for Preliminary Injunction. 20-cv-00887, (Dkts.114-140). The Court has not ruled on those allegations. Plaintiffs Amended Complaint in this case now fully mirrors the causes of action contained in *Black Lives Matter*, as Plaintiffs elected to drop the equal protection claim raised in the Complaint. (*See* Dkt. 42-1). Plaintiffs' claims are now limited to alleged Fourth and First Amendment violations.

II.   <u>Facts relied upon by Plaintiffs in support of their Motion for Preliminary Injunction.</u>

A.  Named Plaintiffs.

There are four Plaintiffs remaining in this case. (*See* Dkt. 42-1). Plaintiffs Benton, Bryant, Cavanaugh, and Garrison all attest they have not attended any demonstrations since their submissions in support of their motion for TRO. (*See* Dkts. 5-6,8-9; 32-35). Plaintiffs all attest that they have reviewed the preliminary injunction in *Black Lives Matter* and this Court's denial of their request for temporary restraining order. Plaintiffs nonetheless declare that the orders are "insufficient to protect my safety." (Dkt. 32, ¶¶ 12-15; Dkt. 33, ¶¶ 14-17; Dkt. 34, ¶¶ 10-13; Dkt. 35 ¶¶19-22).  Additionally, Plaintiffs' declarations all state verbatim the following:

> On August 26, 2020, I saw videos of SPD officers respond to a vigil held for Summer Taylor, a protestor who was killed in July 2020. The vigil was calm, but SPD attacked those in attendance with incredible force. SPD officers used mace/pepper spray on individuals, including a member of the media.  On September 7, 2020, I saw videos of SPD officers respond to a Labor Day march to the Seattle Police Officer's Guild office. Within minutes of arriving at the office, SPD officers converged on protestors, using crowd control weapons. The march was very calm before SPD engaged, there

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ENTRY OF A STAY - 4 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

were even young children in attendance. After observing this response, I do not feel safe attending future protests until SPD is enjoined from using such extreme force against protestors without provocation. I recognize that protests will continue to occur as they have been for months. Especially as the election approaches, these protests against police brutality will likely increase. I have identified the following protests that I would like to be able to attend, however I am not sure that I will feel safe enough to participate. Recurring Protests: i. Every Day Morning Marches, Monday-Friday at 9:00 AM, various locations ii. Every Day Evening Marches, Monday-Friday at 7:00 PM, various locations iii. Black Indigenous Coalition March, Fridays at 5:00 PM, Capitol Hill. I also fear for my safety in attending other events such as community gatherings and vigils, even if they do not typically garner police presence, because SPD has chosen to treat all of these events as riots.

(Dkt. 32, ¶¶ 16-20; Dkt. 33, ¶¶ 18-20, 23-24; Dkt. 34, ¶¶ 14-18; Dkt. 35 ¶¶23-27). Additionally, Plaintiff Bryant attests that she purchased protective gear. (Dkt. 34, ¶¶11-13). Plaintiff Bryant also attests that she would attend additional demonstrations with protective gear – but has not done so, despite her earlier purchase of the same. (*Id.* at ¶¶ 20-22).

B.   Non-Plaintiffs.

Plaintiffs also rely on declarations provided by journalists Rich Smith and Omari Salisbury authenticating recordings from August 26, 2020 and September 7, 2020. (Dkts. 38, 40). Plaintiffs rely on a declaration from Chris Rojas, who recorded a video from September 7, 2020 (Dkt. 39) and Marcus Kulik who recorded a video of a single blast ball deployment from September 22, 2020 outside of the east precinct. (Dkt. 37). Plaintiffs rely on a declaration from Keaton Slansky, who alleged to have had a flash bang allegedly bounce off his helmet on September 26, 2020. (Dkt. 41). Finally, Plaintiffs rely on the declaration of Plaintiffs' counsel, who reflects her observations of video recordings. (Dkt. 36).

C.   Events up to August 18, 2020.

Plaintiffs recount events that led up to the denial of Plaintiffs' motion for reconsideration of their request for entry of a TRO. These events were addressed by the City in response to the Plaintiffs'

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ENTRY OF A STAY - 5 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

motion for entry of a TRO, and for the purpose of efficiency, adopts and incorporates that response herein. (Dkt. 21).

D.   July 25.

The events of July 25 were evaluated by the Court previously and did not result in the requested injunctive relief.   (Dkts. 25, 27). The City addressed these events in greater detail in response to the Plaintiffs' Motion for TRO and incorporates them herein. (*See* Dkt. 21, p. 9; 20-cv-887, Dkt. 83). Briefly, on July 25, members of the crowd initiated significant and substantial instances of violence and property destruction. Ultimately, 59 of 150 responding officers were injured. The additional complained-of events are discussed in more detail below. While Plaintiffs' recount only isolated officer actions which they viewed online, the fuller picture indicates that there was significant property damage and violence initiated by members of the crowds, and CCWs were used, when needed, in accordance with the parameters of the *Black Lives Matter* Order and often after other tactics had been attempted unsuccessfully.

E.   August 26.

None of the Plaintiffs attended demonstration events on August 26, 2020 and, therefore, they do not have any first-hand experience at those events. (Dkts. 32-35). The events of August 26, 2020 are captured by the declaration of Lt. John Brooks filed on October 2, 2020 in the *Black Lives Matter* litigation. (20-cv-887, Dkt. 137, Sharifi Dec. ¶ 2).   The City adopts and incorporates Lt. Brooks' declaration in support of this briefing. Additionally, the City offers a summary as follows. On August 26, 2020, there was an unpermitted demonstration event in front of the Washington State Patrol office. After monitoring demonstrators for some time, a crowd gathered and were blocking traffic with approximately a dozen vehicles.[1] Parked in front of the Washington State Patrol station and the

---

[11] Sometimes referred to as a "car brigade."

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 6 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Seattle Fire Station next door, these cars prevented emergency vehicles from entering or exiting the Fire Station.  The vehicles also blocked the off-ramp from eastbound 520, which created especially hazardous conditions.[2] Cars were given several warnings and ample time and opportunity to leave with egress options. (*Id.*).  Eventually, WSP troopers started moving protesters away from the station. SPD officers also began moving the protesters, prompting coordinated resistance from members of the group, some of whom committed assaults.[3] The event had become violent and dangerous. Multiple and repeat dispersal orders were given, which were not heeded by many members of the crowd. (*See Id.* at ¶ 15). The dispersal Orders can be heard on the attached videos to Lt. Brooks' declaration (*See* Ex. A).[4]  In response to assaults, resistive behavior, and de-arrest tactics, there were targeted OC deployments and one reported blast ball used. (*Id.* at ¶¶ 15-17).

   F.   September 7.

   None of the Plaintiffs attended demonstration events on September 7, 2020 and, therefore, they do not have any first-hand experience at those events. (Dkts. 32-35). On September 7, 2020, Seattle Police Officers were present but did not engage with members of the crowd until after the police received reports that a member of the crowd was readying a Molotov cocktail. Members of the crowd were also throwing garbage and other material over the exterior fence onto private property

---

[2] This was especially hazardous, because that exit ramp is somewhat "blind," so motorists decelerating from highway speeds would have suddenly been confronted with a completely unexpected blockade with very little time to react to it. (Brooks dec., ¶ 13).

[3] Those efforts included poking umbrellas at officers, assaulting officers, refusing to move and attempting to de-arrest vehicle drivers who had refused to move. The group deployed pyrotechnics and smoke devices endangering officers and obstructing vision. Many of the protesters were wearing helmets and gas masks and carrying shields and umbrellas.  One person was arrested for shining a laser pointer into an officer's eyes – a Class C felony. As officers effected the arrest of that person, people holding shields pushed back against line officers. One officer deployed a targeted burst of OC spray at two individuals who were pushing forward with shields in an attempt to de-arrest the suspect. The two subjects retreated and were not arrested. (*Id.* at ¶ 14).

[4] The corresponding videos to Lt. Brooks' declarations were filed with the Court in the *Black Lives Matter* litigation as Dkt. 138. The videos will be made available to Plaintiffs' counsel in this litigation.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ENTRY OF A STAY - 7 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

(near the SPOG office), apparently providing combustible material to be ignited. (*Id.* at ¶ 21).[5] Officers identified the suspect and his location in the crowd. As they moved in without using any OC spray or blast balls, members of the group attempted to prevent the arrest by using improvised shields and other tactics to stop the officers.[6] One individual struck the arresting officer in the face with a pipe. Other members of the crowd began directing what appeared to be bear mace at police, while also throwing projectiles and explosives, igniting smoke grenades, using leaf blowers to direct OC spray back at officers, and striking officers with shields and umbrellas. (*Id.* at ¶ 23).

Dispersal orders were given and the crowd was instructed to move North. After a momentary stabilization, members of the crowd continued to throw rocks, bottles, projectiles. While continuing to push north, the group did not initially move and countered by detonating improvised explosive devices and smoke grenades. Officers continued to receive projectiles and less lethal munitions were ordered to address specific threats and to stop the assaults on officers. (*Id.* at ¶¶ 24-25).

G.  September 22.

None of the Plaintiffs attended demonstration events on September 22, 2020 and, therefore, they do not have any first-hand experience at those events. (Dkts. 32-35). Around 10:40 p.m., a group of around 40 demonstrators appeared around the East Precinct, a pickup truck pulled up parallel to the northern wall of the precinct, and a passenger exited the vehicle. There was concern that the person was attempting to set up an explosive device, which would have endangered the officers inside and put the other occupants of the connected buildings at risk. East precinct resources responded and set up a car line on 12th Avenue, using vehicle lights and sirens to move the crowd away from the

---

[5] Music was played by an individual within the SPOG building and not accessible by Lt. Brooks to turn off. (Brooks Dec., ¶ 22).

[6] The bike officer movement to effect this arrest was not a crowd management maneuver aimed at moving the crowd or gaining compliance.  Rather, it was a purposefully sudden and targeted surge forward in an attempt to apprehend the suspect, before he was able to disappear into the large crowd.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 8 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

precinct. This initially worked, but the crowd later turned back, attempting to surround officers' vehicles. (*Id.* at ¶¶ 22-23).  The group closed in on one police vehicle, pounded on its windows, stood in the path of a moving vehicle, and used lit cigarettes to damage the hood. A member of the crowd also committed a Felony by shining a laser-pointer into the vehicle, in an apparent attempt to injure the eyes of the officer. Officers could not gain sufficient distance from the crowd, and the crowd continued to close in on officers, ignoring verbal commands. Multiple dispersal orders were given over the PA. Finally, Lt. Brooks ordered a deployment of a single blast ball to create separation between officers and the crowd. A bike officer who was certified to carry and deploy blast balls was able to approach from the side and deploy the munition. (¶¶ 23-25). The deployment can be seen in Exhibits B and C of Lt. Brooks' declaration.  This targeted deployment achieved its intended purpose and did not result in any injury.

H.  September 23.

None of the Plaintiffs attended demonstration events on September 23, 2020 and, therefore, they do not have any first-hand experience at those events. (Dkts. 32-35). Captain Matt Allen offered a declaration in *Black Lives Matter* regarding the events of September 23, 2020. (20-cv-777, Dkt. 139, Sharifi Dec. ¶ 3). The City adopts and incorporates that declaration as part of this response. On September 23, 2020, there were multiple events scheduled to demonstrate against the grand jury decision in the killing of Breonna Taylor. (Allen Dec., ¶¶ 5-7). Available information indicated that the demonstration at Westlake Center was intended to be a peaceful demonstration, whereas another demonstration near Cal Anderson Park was for those wanting to engage in "more direct action." (*Id.* at ¶ 7).

After a peaceful demonstration, some attendees departed from the Westlake event and caused property damage throughout downtown. Likewise, members of the demonstration from Cal Anderson

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ENTRY OF A STAY - 9 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    were causing property destruction at local businesses. (*Id.* at ¶¶10-12). At around 9:45 p.m., in

2    response to multiple instances of property destruction, Captain Allen issued dispersal orders over the

3    PA system that went unheeded by the crowd. (*Id.* at ¶ 14). Officers were assaulted with rocks by

4    crowd members. (*Id.* at ¶ 15). Additional dispersal orders were issued and officers were still assaulted

5    with rocks. (*Id.* at ¶¶ 16-18). Some time later, someone threw a firework into the East Precinct Sally

6    Port, injuring bicycle officers. (*Id.* at ¶ 23-24). Captain Allen gave two warnings via the PA system

7    in his car to stop launching pyrotechnics at the precinct as they were causing a public safety hazard.

8    (*Id.* at ¶ 24).

9        Later, bicycle officers were engaged to arrest the individual that threw the firework. When

10   encountering demonstrators throwing cans and bottles at the officers, one of the bicycle officers

11   tripped and fell off his bike. Members of the crowd started advancing on him and he had to use OC

12   spray to defend himself. He then turned and got hit in the head with a bat with such force that it

13   cracked his helmet all the way through. (*Id.* at ¶¶25-28).[7] After regrouping, members of the crowd lit

14   large fires in the middle of the road using garbage, signs, and other debris. It was not safe nor feasible

15   to wait any longer given the size of the fire, let alone allow people more time to build the flames

16   higher. Captain Allen directed Lt. Brooks to move officers in to safeguard property and restore order

17   by extinguishing the flames and dispersing the crowd to prevent further unlawful and dangerous

18   behavior. (*Id.* at ¶ 29). Immediate dispersal orders were issued on the loudest audible setting on the

19   PA system. (*Id.* at ¶ 30). As officers moved in to disperse the crowd, they continued to be assaulted

20   by bottles and bear mace was deployed by one crowd member. (*Id.* at ¶ 31). The dispersal order

21

22   _____

23   [7] One of the many online links to the video is available here: https://www.dailymail.co.uk/video/news/video-2256230/Video-Shocking-moment-Seattle-cop-hit-head-baseball-bat.html. This event later resulted in an arrest and subsequent prosecution: https://www.kiro7.com/news/local/teen-faces-charges-bat-attack-seattle-bike-officer/4OV2ELWSMFFGZJTSLYOCNHHUJI/.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 10 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

continued to be given through the PA and later the bearcat speaker system (which is louder) – and officers continued to be assaulted. A member of the crowd detonated a mortar-style firework and there were reports that members of the crowd were attempting to roll dumpsters down streets toward officers. (*Id*. at ¶¶ 32-35). Additional fires were lit and a member of the crowd was reportedly lighting fires with a blow torch as the demonstrators were moving. Throughout dispersal, radio communications reflected continuing assaults and property destruction and crowd control devices were used in response. (*Id.* at ¶¶ 36-40).[8]

I.   September 26.

None of the Plaintiffs attended demonstration events on September 26, 2020 and, therefore, they do not have any first-hand experience at those events. (Dkts. 32-35).  A group of demonstrators began to march around 4:15 p.m., with some minor acts of vandalism during the march. (Osborne Dec., ¶ 4-5) When downtown, members of the group broke windows on several buildings. (*Id.* at ¶ 6). Officers attempted to use lights and sirens to distract the group from further destructive action. Instead of dispersal, the group moved toward officers, causing officers to vacate due to safety concerns at that time. (*Id.*). As of 6:30 p.m., the group continued to march with certain members vandalizing property. They also moved dumpsters, garbage cans, and flammable material into a barricade in the east crosswalk and lit it on fire. (*Id.* at ¶ 8). Repeated dispersal orders were issued after streets were blocked, fires were burning, and there were tire puncturing devices laid on the street. The dispersal order also followed several acts of vandalism and extensive property damage to area

---

[8] Captain Allen later learned of the viral incident of a bicycle officer rolling the bicycle over the head of an individual on the ground. (*Id.* at ¶ 41). While entirely unrelated to CCWs, it should be noted that Captain Allen immediately notified the force investigation team of the need to investigate – this incident later was referred for a criminal investigation. (*Id.* at ¶ 41-45).    This event and some of additional video from September 23, 2020 is discussed here: https://www.king5.com/article/news/local/people-to-hold-vigil-in-seattle-to-demand-justice-for-breonna-taylor/281-047bd991-03b9-4dc4-9f8b-87f1e8f3bdaa.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ENTRY OF A STAY - 11 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

businesses. (*Id.* at ¶ 9). Officers formed a line approximately 75-100 feet from the demonstrators awaiting dispersal. Dispersal orders went unheeded. Members of the group began to throw rocks and other debris towards officers. (*Id.* at ¶¶ 10-11).

Officers approached the crowd repeatedly shouting "move back."  While officers were moving forward approximately 2/3 of the group moved away with the remaining 50ish pulling in tight together, behind shields, with some individuals continuing to throw items at officers, including fireworks and others using bear spray towards officers. (*Id.* at ¶ 12). Officers deployed blast balls and OC in targeted responses to members of the remaining crowd that were using bear spray and throwing projectiles at officers. One member of this particular protest crowd deployed a CS type cannister toward officers as the crowd moved back. The crowd was moved westbound out of the area. (*Id.* at ¶ 13).[9]

## LEGAL STANDARD

To warrant injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Klein v. City of San Clemente*, 584 F.3d 1196, 1199 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). "Plaintiffs bear the burden of proving each one of the [four] elements." *Klein,* 584 F.3d at 1201. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened

---

[9] Images from the events at issue posted by SPD are available here: https://spdblotter.seattle.gov/2020/09/26/10-arrested-during-protests-in-capitol-hill-neighborhood/. A local news story with video of the dispersal (and firework deployment) can be seen here:  https://www.kiro7.com/news/local/10-arrested-after-windows-smashed-fires-set-during-protest-seattle/4GTX4ZAH7JCQJFFA5K55M4AY2U/.

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldridge,* 844 F.2d 668, 674 (9th Cir. 1998). Plaintiffs fail to meet this standard.

**ARGUMENT**

I.     Well-Established Judicial Principles Bar Repeated Litigation of the Same Facts by New Plaintiffs Desiring a More Restrictive Injunction than Previously Ordered.

It is well-established that preventing unnecessary re-litigation is of paramount importance to our judicial system.  For example, one of the very few exceptions to the bar against federal courts from enjoining state court proceedings is when an injunction is necessary to protect a prior federal court judgment, by stopping the state court from litigating claims and issues that the district court has already decided. *See, e.g., Brothers Records, Inc. v. Jardine,* 432 F.3d 939, 942-943 (9th Cir. 2005). Collateral estoppel and res judicata both have "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S. Ct. 645 (1979).

This Court has already squarely addressed the issue at hand, held that securing constitutional rights of demonstrators requires injunctive relief regarding the City's use of crowd management tools (blast balls, OC spray, tear gas) and identified and Ordered an available legal remedy in light of the equities. Prior litigants in *Black Lives Matter* requested the same relief, an absolute bar on less-lethal devices, and were unsuccessful in securing it. Moreover, those same litigants have ongoing proceedings that address the same demonstration events (other than September 26) raised in the underlying Motion here. (20-cv-887, Dkts. 114-140). The United States Supreme Court rejected the concept of "[p]ermitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 328, 99 S. Ct. 645 (1979) (quoting *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 185, 72 S. Ct. 219 (1952)). Further, there

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 13 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

is another preliminary injunction issued by Judge Robart against a total ban on the use of crowd control weapons, pending the policy review process of the Consent Decree. Plaintiffs' prayer for relief directly interferes with that court's order as well. (Dkt. 647).  The City has briefed this issue more fully in its response to Plaintiffs' motion for entry of a temporary restraining order (Dkt. 21, pp. 10-14) and hereby incorporates its arguments.  Those same arguments apply today, perhaps even more so, given the development of facts in the Consent Decree litigation and *Black Lives Matter*.

II.    <u>Plaintiffs Fail to Establish a Likelihood of Success on the Merits.</u>

Plaintiffs must establish that they likely will succeed on the merits of their constitutional claims.  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365 (2008). A "possibility" of success is insufficient to meet this standard. Plaintiffs must make a "clear showing" that they are entitled to preliminary relief." *Id.* Even if Plaintiffs produce "a significant body of evidence that establishes some probability of success on their individual claims for relief for past violations of 42 U.S.C. § 1983 . . . ultimate success on these claims would entitle plaintiffs to money damages only, *not* injunctive relief." *Campbell v. City of Oakland,* No. C 11-5498 RS, 2011 WL 5576921, *3-4 (N.D. Cal. Nov. 16, 2011). "**Sporadic or isolated violations of individual protesters' rights are insufficient to support broad injunctive relief against an entire agency**." *Id.* (citing *Lewis v. Casey,* 518 U.S. 343, 360, 116 S. Ct. 2174 (1996)) (emphasis added). Plaintiffs cannot meet this high standard.

Plaintiffs themselves attest that demonstrations happen every day in Seattle – some days result in multiple demonstrations a day. (Dkt. 32, ¶ 19; Dkt. 33, ¶ 23; Dkt. 34, ¶ 17; Dkt. 35, ¶ 26). The Everyday Marches Plaintiffs claim they wish to attend happen nearly daily without incident or police

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 14 (2:20-cv-01174 RAJ)

interaction.[10] Plaintiffs admit as much with their somewhat contradictory statements: "I also fear for my safety in attending other events such as community gatherings and vigils, *even if they do not typically garner police presence*, because SPD has chosen to treat *all* of these events as riots." (Dkt. 32, ¶ 20; Dkt. 33, ¶ 24; Dkt. 34, ¶ 18; Dkt. 35, ¶ 27) (emphasis added). In addition to those identified, there are several demonstrations that occur without police deployment or the use of CCWs. SPD response, and certainly CCWs, are not used in the vast majority of daily pop-up or planned demonstrations. (Grenon Dec., ¶¶ 6-7).[11]

     *a. Plaintiffs fail to show a likelihood of success on their First Amendment claims.*

In their discussion of likelihood of success on the merits, Plaintiffs simply recite several truisms about First Amendment law, which are either not dispositive or not relevant here. (Dkt. 31, at pp. 9-10). The City wholeheartedly agrees that political protest is a form of free speech, even when that speech is angry. Further, there is no dispute that a) public officials cannot order the immediate arrest of their critics and b) ending peaceful First Amendment speech because there might be future illegality or violence is not permissible.  However, Plaintiffs make no allegations about arrests and never allege that the City took action to end speech prior to violent or illegal acts occurring.

Instead, they complain about the use of crowd control tools, without even alleging that the use of these tools was outside of the parameters of the Order, other than to claim that, from their limited view on a video feed, the viewable portion of the demonstration appeared "calm" before police appeared on the video feed. To establish their First Amendment claims, however, Plaintiff must establish that (i) the City's actions "deterred or chilled" their political speech, and (ii) that such

---

[10]*See* https://www.facebook.com/everydaymarchseattle/;
https://www.instagram.com/morningmarchseattle/?igshid=1dps5kjx7ikmv; https://www.kuow.org/stories/updates-protests-for-racial-justice-in-the-seattle-a (discussing everyday marches).
[11] A simple scroll through the Seattle Department of Transportation Twitter page (no subscription necessary) will show marches large and small traveling through Seattle streets nearly daily without police response, and with occasional traffic alerts for the Seattle traveling public. *See* https://twitter.com/SDOTtraffic.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 15 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

deterrence was a "substantial or motivating factor" in the City's conduct. *Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir. 1999). The proper inquiry asks "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id.* Here, this Court has repeatedly balanced the equities such that CCWs can be used in certain circumstances while still maintaining constitutional protections. Therefore, Plaintiffs continued insistence on *a bar of all crowd control tools prior to their return to protests* speaks not to a chilling effect for individuals of ordinary firmness, but rather that the Plaintiffs wish to impose a standard beyond that which is constitutionally required. The U.S. Supreme Court has consistently required that First Amendment analysis apply reasonable and objective reactions and should not depend on "the will of an eggshell observer." *See Elonis v. United States*, 575 U.S. 723, 135 S. Ct. 2001 (2015).

Moreover, Plaintiffs make no attempt to establish that there were, in fact, protected speech activities occurring at the protests when crowd control tools were utilized and directed. "(W)here demonstrations turn violent, they lose their protected quality as expression under the First Amendment." *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S. Ct. 2294 (1972).  If a "serious expression of an intent to commit an act of unlawful violence is not protected" First Amendment expression, actual violent acts are similarly not protected. *See Virginia v. Black,* 538 U.S. 343, 359, 123 S. Ct. 1536 (2003). Use of crowd control tools to combat violence and illegality, rather than protected speech, cannot logically have a chilling effect on First Amendment rights.  The two are unrelated.

   *b.   Plaintiffs fail to show a likelihood of success on their Fourth Amendment claims.*

Fourth Amendment rights are personal rights and may not be vicariously asserted. *Rakas v. Illinois,* 439 U.S. 128, 133-4, 99 S.Ct. 421, 425 (1978) (quoting *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961 (1969)).  Fourth Amendment rights cannot be asserted when an individual has

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 16 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

not personally been subjected to either search or seizure. "[T]he Supreme Court and the Ninth Circuit have routinely held in a variety of circumstances that a plaintiff may not assert the Fourth Amendment rights of another person." *Microsoft Corp. v. U.S. Dept. of Justice,* 233 F. Supp. 3d 887, 913 (W.D. Wash. 2017). This principle applies to cases brought under 42 U.S.C. § 1983." *Id.*

There is no evidence that Plaintiffs were subject to crowd control weapons at any point after this Court's denial of their Motion for Entry of a TRO. Plaintiffs admit that they have not attended any protests since their motion for entry of a TRO. *See* (Dkts. 32-35). Plaintiffs admit that demonstrations happen daily without law enforcement involvement or uses of force. (Dkt. 32, ¶ 20; Dkt. 33, ¶ 24; Dkt. 34, ¶ 18; Dkt. 35, ¶ 27). The majority of daily demonstrations do not elicit any use of force by SPD officers – let alone a police response. (*See* Grennon Dec., ¶¶ 6-7).

A person is "seized" when officers, by means of physical force or show of authority, terminate or restrain the person's freedom of movement "through means intentionally applied." *Nelson v. City of Davis,* 685 F.3d 867, 875 (9th Cir. 2012). Once a seizure is deemed to have occurred, courts evaluate the reasonableness of the seizure and force used to effectuate that seizure. Evaluation of whether a person was subject to excessive force requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Luchtel v. Hagemann,* 623 F.3d 975, 980 (9th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. U.S. 386, 396, 109 S. Ct. 1865 (1989)). Plaintiffs acknowledge that daily demonstration events in Seattle are entering their sixth month–sometimes with multiple demonstrations a day. Plaintiffs acknowledge that they personally attended just one to two demonstrations where they complain of improper seizure by SPD (*See* Dkts. 32-35). To show a likelihood of success on the merits – Plaintiffs must establish a threshold beyond a "sporadic or isolated" violation of their Fourth Amendment rights. *See Campbell,* 2011 WL 5576921, at *3-4.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ENTRY OF A STAY - 17 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs cannot establish a likelihood of success on the merits of their Fourth Amendment claims to amount to a ban on crowd control devices for the City as a whole.

III.    Plaintiffs Will Not Incur Imminent Irreparable Harm.

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009) (citation and internal quotations omitted).

Plaintiffs seek a ban on the use of crowd control devices based on their concerns of SPD's use of CCWs on specific dates dating back to June. In support of their temporary restraining order, Plaintiffs attested that they did not feel safe demonstrating without protective equipment. (Dkts. 5-9). Many of the Plaintiffs claimed that they had purchased or were in the process of purchasing protective equipment. (*Id.*). Now, Plaintiffs attest that they have not attended any demonstrations since the denial of the request for TRO – despite their previous acquisition of protective equipment. (Dkts. 32-35). All Plaintiffs except Plaintiff Bryant (Dkt. 33) have removed reference of the need for protective equipment at demonstration events and reference a blanket fear of attending demonstrations. (*See* Dkts. 32, 34-35). Plaintiffs fail to identify a "concrete and particularized injury" to which they are subject and they admit and recognize that there are demonstration events daily that do not yield police responses. (*See* Dkt. 32, ¶¶ 19-20; Dkt. 33, ¶¶ 23-24; Dkt. 34, ¶¶ 17-18; Dkt. 35, ¶¶ 26-27).

Plaintiffs essentially speculate that because CCWs have been used at prior demonstrations, that they may be used at one attended by the Plaintiffs. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ENTRY OF A STAY - 18 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Svcs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original) (internal citations omitted). Plaintiffs have elected not to attend any recent demonstrations, despite a previously asserted desire to do so after acquiring protective equipment (Dkts. 5-9 and Dkts. 32-25) and an acknowledgment that most events, including many of the very events Plaintiffs' have identified as ones they would attend, do not have any police presence or response. Plaintiffs fail to demonstrate immediate threatened injury with when their injuries are speculative.

IV.    Balance of Equities and Serving the Public Interest.

When the government is a party, consideration of the balance of the equities and the public interest merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749 (2009)).  Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Defense Council, Inc*., 555 U.S. 7, 24 (2008).

Like the response to the Plaintiffs' request for TRO, the posture of the requested relief in this case – a total prohibition on CCWs– cannot avoid the existing Court orders on this issue. This Court's preliminary injunction in *Black Lives Matter* and Judge Robart's preliminary injunction in the Consent Decree litigation heavily weight the "balance of equities" in the City's favor.  The City does not dispute Plaintiffs' constitutional rights weigh heavily on the Plaintiffs' side of the scale. The Seattle Police Department's policies pertaining to crowd management, which have been vetted through the Consent Decree process, are designed to facilitate and support free speech. Nonetheless,

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 19 (2:20-cv-01174 RAJ)

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

this Court in its *Black Lives Matter* preliminary injunction and Judge Robart in his preliminary injunction fully recognized the needs for the City to protect the interests of public and officer life and safety or the need to protect public and private property. This Court reaffirmed this careful balancing when it denied Plaintiffs' request for TRO. (Dkt. 25).

Plaintiffs fail to provide any evidence of why this Court needs to rebalance the equities or why the balance now tips in Plaintiffs' favor. Evidence offered Plaintiffs' declarations and by the City shows that the demonstration events identified by Plaintiffs – July 25, August 26, September 7, September 22-23, and September 26 included property damage and violent actions by some members of the crowd. It is well-established that violent protests are not First Amendment activities. The evidence in the record clearly establishes that most demonstration events do not result in a police response, much less the use of crowd control devices. The evidence also shows that the parameters of the Court's preliminary injunction in *Black Lives Matter* are subject to enforcement and scrutiny. (20-cv-887, Dkts. 114-140).

Plaintiffs' request for a preliminary injunction prohibiting the use of crowd control devices weighs heavily against the need for the City to continue to protect life-safety and property. Recognizing the Plaintiffs right to demonstrate peacefully, an abrupt termination of the use of CCWs will not enable enough time to adopt and implement "alternative mechanisms to de-escalate and resolve dangerous situations if the crowd control implements with which the officers have been trained are abruptly removed." *United States v. City of Seattle,* 12-cv-1282 (Dkt. 630 pp.6-7). This may yield dangerous results for the public and for law enforcement. This Court's careful balancing of equities should not be disturbed.

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 20 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

V.   <u>This Court should stay proceedings in this matter pending disposition of *Black Lives Matter*</u>

As described above, Plaintiffs have the same two causes of action as *Black Lives Matter* both arising out of SPD's use of crowd control devices at demonstration events – on most of the same identified and complained of dates. With their recent amendment dismissing their equal protection claim, Plaintiffs' allegations in the instant case mirror those of the plaintiffs in *Black Lives Matter*. *See Black Lives Matter,* 2:20-cv-00887 (Dkts. 1, 6). In *Black Lives Matter et al. v. City of Seattle,* 2:20-cv-00887 a joint stipulated stay was submitted to await the possible implementation of the CCW Ordinance after its review under the terms of the Consent Decree, although a contempt motion is being heard. Due to the current posture and near identical relief sought, there is judicial economy to stay and consolidate this case while awaiting the resolution of *Black Lives Matter et al. v. City of Seattle,* 2:20-cv-00887. Plaintiffs rely heavily on the briefing and submissions in *Black Lives Matter*. Concurrently, as today's briefing makes clear, there is such duplication in the two matters that the City is having to make the same arguments, about the same events, in multiple matters, often cross-referencing the other matter. This is simply a textbook case for judicial economy through a stay.

The granting of the City's requested Ooder for a stay of proceedings would serve the interests of judicial economy and would serve to "secure the just, speedy and inexpensive determination of [this] action" as it would enable the parties and the Court to avoid expending considerable time and fees in discovery and preparing for trial when such expenses may ultimately be unnecessary. *See* Fed. R. Civ. P. 1.

Courts have found a stay of deadlines to be beneficial in instances in which a stay "would preclude any time and resources from being [unnecessarily] spent …" and would conserve limited judicial resources. *8665 North Cove, LLC v. American Family Mut. Ins. Co.*, 2:12-CV-237-DAK,

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 21 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

2013 WL 121232 at *2 (D. Utah Jan. 9, 2013) (granting motion to stay where both parties would be "benefitted by a stay because neither will incur unnecessary legal expenses"). *See also Karpenski v. American General Life Companies, LLC.*, 2:12-CV-01569-RSM, 2013 WL 6086230 at *2 (W.D. Wash. Nov. 19, 2013) (finding that "continuing all case deadlines is … prudent to conserve judicial resources"). The Court should issue a stay.

## CONCLUSION

Plaintiffs again fail to meet the very high burden for this Court to modify its existing preliminary injunction in *Black Lives Matter* or to potentially conflict with Judge Robart's preliminary injunction in the Consent Decree litigation. Plaintiffs fail to meet the necessary requirements that would entitle them to injunctive relief far beyond the mandated restraint already constructed by this Court. This Court should deny Plaintiffs' request for preliminary injunction. Further, the City requests a stay of all proceedings (including discovery, pretrial, trial and trial related deadlines) pending disposition of *Black Lives Matter et al. v. City of Seattle,* 2:20-cv-00887.

DATED this 19th day of October, 2020.

PETER S. HOLMES
Seattle City Attorney

By:  */s/ Ghazal Sharifi*
Ghazal Sharifi, WSBA# 47750
By:  */s/ Carolyn Boies*
Carolyn Boies, WSBA# 40395

Assistant City Attorneys
E-mail:  Ghazal.Sharifi@seattle.gov
E-mail:  Carolyn.Boies@seattle.gov
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Phone:  (206) 684-8200

*Attorneys for Defendant City of Seattle*

THE CITY OF SEATTLE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR ENTRY OF A STAY - 22 (2:20-cv-01174 RAJ)

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200