HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JESSICA BENTON, SHELBY BRYANT, ANNE MARIE CAVANAUGH, ALYSSA GARRISON, AND CLARE THOMAS,

   Plaintiffs,

   v.

CITY OF SEATTLE,

   Defendant.

Case No. 2:20-cv-01174-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction (Dkt. # 31) and Motion to Amend Complaint (Dkt. # 42). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the motion for preliminary injunction is **DENIED**, and the motion to amend complaint is **GRANTED**.

## II. BACKGROUND

This case is all but identical to a separate earlier-filed case pending before this Court. Dkt. # 25 at 1-4. In the summer of last year—nearly two months before this action was filed—several plaintiffs sued the City of Seattle ("City") in *Black Lives Matter Seattle-King County v. City of Seattle*, No. 2:20-cv-00887-RAJ (W.D. Wash. filed June 9, 2020) ("*Black Lives Matter*" or "*BLM*"). Id.

ORDER – 1

#### A. *Black Lives Matter* Case

*BLM* plaintiffs[1] allege that, following the death of George Floyd in Minneapolis, protests in Seattle ensued and the Seattle Police Department ("SPD") exercised unconstitutional force to suppress protesters. Dkt. # 25 at 2. The plaintiffs assert claims for violations of their First and Fourth Amendment rights. *Id.*

The story of *BLM* is one of injunction and enforcement. After they filed their complaint, the *BLM* plaintiffs moved for a temporary restraining order ("TRO"). Dkt. # 25 at 2. The Court granted the motion and entered a TRO. *Id.* The parties later stipulated to a preliminary injunction, which the Court also granted. *Id.*

Over a month later, on July 27, 2020, the plaintiffs moved for an order to show cause why the City should not be held in contempt for violating the preliminary injunction. *Id.* at 3. The contempt motion was based on events that happened on July 25, 2020, just two days earlier, when SPD allegedly deployed crowd control weapons on protestors. *Id.* Weeks after the plaintiffs moved for an order to show cause, the parties entered a stipulation, which the Court granted. *Id.* Among other things, the stipulation clarified the parties' initial, stipulated injunction. *Id.*

On September 30, 2020, *BLM* plaintiffs filed their second contempt motion. *Black Lives Matter*, No. 2:20-cv-00887-RAJ (Dkt. # 114). The motion identified four dates of protests: August 26, September 7, September 22, and September 23. *Id.* *BLM* plaintiffs alleged that, on those days, SPD used crowd control weapons in a way that violated the preliminary injunction orders. *Id.* Like their first contempt motion for the July 25, 2020 protest, the plaintiffs asked the Court to hold the City in contempt. *Id.*

The record that followed was enormous: The City filed a response. *Id.* (Dkt. # 135). The Court conducted a status hearing. *Id.* (Dkt. # 140). The parties submitted a joint report regarding the briefing schedule and evidentiary scope of the contempt

---

[1] For clarity, the Court refers to the *BLM* plaintiffs as "*BLM* plaintiffs" or "the plaintiffs." The Court refers to the named plaintiffs in this action simply as "Plaintiffs."

ORDER – 2

1  motion. *Id.* (Dkt. # 141).  The Court held another status hearing and entered a briefing
2  schedule. *Id.* (Dkt. ## 142-43).  Per the briefing schedule, the City filed a second
3  response. *Id.* (Dkt. # 144).  *BLM* plaintiffs filed a reply. *Id.* (Dkt. # 152).  On September
4  18, 2020, the Court heard oral argument on the motion. *Id.* (Dkt. # 160).  Just over two
5  weeks later, the Court entered a 27-page order granting the motion in part, denying it in
6  part, and holding the City in contempt. *Id.* (Dkt. # 161).  The parties then argued over
7  attorneys' fees and what the appropriate contempt sanction should be. *Id.* (Dkt. ## 164,
8  166, 171, 176).  And the City moved for reconsideration. *Id.* (Dkt. # 178).

The contempt matter concluded nearly three months after it began, with a 20-page order and an award of civil compensatory sanctions in the form of attorneys' fees. *Id.* (Dkt. # 189).  All told, *BLM* plaintiffs filed nearly 30 declarations. *Id.* (Dkt. ## 115-34, 153, 167-70, 177, 187).  Likewise, the City filed their own declarations, along with scores of officer statements and hours of body worn video camera footage. *Id.* (Dkt. ## 136-39, 145-51, 172-75, 179-85).

### B.   This Case

This case began right after *BLM* plaintiffs' first contempt motion.  On August 3, 2020, Plaintiffs here sued the City and moved for a TRO in their own right.  Dkt. ## 1, 4.

Like the *BLM* plaintiffs, Plaintiffs claimed that "Washingtonians are trying to exercise their right to protest in the streets of Seattle to demand an end to police brutality," yet they are thwarted because SPD "indiscriminately shoot[s] toxic substances in the air, deploy[s] projectiles at departing protesters, and toss[es] blast balls into close areas of protesters marching."  Dkt. # 1 at 2.  Like the *BLM* plaintiffs' first contempt motion, Plaintiffs' action and motion for TRO were filed in response to the July 25, 2020 protest.  Dkt. # 25 at 3-4.

At least as initially advertised, this case was different from *BLM* in two respects. First, unlike the *BLM* plaintiffs who only brought First and Fourth Amendment claims, Plaintiffs asserted the same claims plus a third claim for the violation of the Equal

ORDER – 3

Protection Clause. Dkt. # 25 at 3-4. They alleged that because prospective protesters needed to clad themselves in "cost-prohibitive gear to withstand munitions," they were subject to a "de facto protest tax." *Id.* (quoting Dkt. # 1 at 4). Second, Plaintiffs sought a blanket, not tailored, prohibition on the same crowd control weapons enjoined in *BLM*. *Id.*

Given that an injunction in *BLM* was already in place, the Court found that Plaintiffs failed to show that the balance of equities tipped in their favor or that their requested TRO would be in the public's interest. *Id.* at 6-7. The Court thus denied Plaintiffs the separate, additional, and blanket injunctive relief they sought. *Id.*

### i. Motion for Preliminary Injunction and Motion to Amend

Like the *BLM* plaintiffs, Plaintiffs here were spurred into action by the August 26, September 7, September 22, and September 23 protests. Whereas the *BLM* plaintiffs filed a second contempt motion, Plaintiffs here moved for a preliminary injunction. Dkt. # 31. Plaintiffs' motion for preliminary injunction challenges the same four protests and one more. *Id.* at 7-8. On September 26, 2020, a protestor claims to have been hit in the head with a flash-bang grenade. Dkt. # 41.

Besides its own declarations, Plaintiffs draw heavily on the record in *BLM* to support their motion for a preliminary injunction. Dkt. # 31. Plaintiffs cite no less than 15 declarations filed in *BLM*. *Id.* Those declarations were attached to the *BLM* plaintiffs' first contempt motion for the July 25, 2020 protest. *Id.* For their part, Plaintiffs attach 10 declarations of their own for the August 26, September 7, September 22, September 23, and September 26 protests. Dkt. ## 32-41. Of the 10 declarants, half did not attend the protests in question. Dkt. ## 32-36. The other declarants attach video footage of the protests that was also before the Court in *BLM*'s second contempt motion. *Compare* Dkt. ## 38, 39 *with BLM* (Dkt. ## 119, 120).

The day Plaintiffs moved for a preliminary injunction they also moved to amend their complaint. Dkt. # 42. Supposedly, they seek to add "recent factual allegations" that

ORDER – 4

have arisen since filing the original complaint. *Id.* They also seek to drop their Equal Protection Clause claim, though they did not inform the Court of this proposed change. *See* Dkt. ## 42, 42-1; *see infra* Section III.A.

### III. DISCUSSION

Now before the Court are Plaintiffs' motion to amend their complaint and motion for a preliminary injunction. The Court addresses each in turn.

#### A. Motion to Amend Complaint (# 42)

Under Federal Rule of Civil Procedure 15, a party may amend its pleading with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(1)(2). Leave to amend should be freely given when justice so requires. *Id.*

Plaintiffs move to amend their complaint. Dkt. # 42. Though they did not obtain the City's consent before filing their motion, the City has since responded and stated that it does not oppose. Dkt. # 44. Given the lack of opposition, the Court grants Plaintiffs leave to file their proposed amended complaint, located at Docket No. 42-1.

Under Local Civil Rule 15, a party requesting leave to amend "must indicate on the proposed amended pleading how it differs from the pleading that it amends by bracketing or striking through the text to be deleted and underlining or highlighting the text to be added." Local Rules W.D. Wash. LCR 15. Plaintiffs have not complied with this rule. Their proposed amended complaint fails to identify how it differs from the initial complaint. *See* Dkt. # 42-1. Reviewing both the initial and proposed complaint, along with Plaintiffs' description of their amendments, the Court surmises that they have dropped Plaintiff Clare Thomas and have added new factual allegations. *Compare* Dkt. # 1 *with* Dkt. # 42-1; *see also* Dkt. # 42. Curiously, it also appears—though Plaintiffs omit this from their motion—that they have also dropped their Equal Protection claim. Dkt. # 48 at 3-4, 21.

**Within 7 days of this Order**, Plaintiffs must file both their proposed amended complaint (Dkt. # 42-1) and, in accordance with Local Civil Rule 15, a document

ORDER – 5

identifying how the initial and amended complaint differ.

### B. Motion for Preliminary Injunction (Dkt. # 31)

#### i. Legal Standard

To issue a preliminary injunction, a court must determine whether a plaintiff (1) is likely to succeed on the merits of their claim; (2) is likely to suffer irreparable harm in the absence of preliminary relief; (3) has shown that the balance of equities tips in the plaintiff's favor, and (4) has shown that an injunction is in the public interest. *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). In the alternative, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Feldman v. Ariz. Sec. of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (internal quotation marks omitted) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

#### ii. *Winter* Factors

Assuming without deciding that the first two *Winter* factors are met, the Court addresses the final two factors, balance of the equities and the public interest. As is the case here, "[w]hen the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Despite the tailored—and now enforced—preliminary injunction orders in *BLM*, Plaintiffs seek a preliminary injunction enjoining the City from even *possessing* crowd control weapons. Dkt. # 31-1 ¶ 1. The Court denies Plaintiffs' request: they have failed to show that the balance of the equities and the public interest favor the additional injunctive relief they seek.

The last two *Winter* factors tip sharply in the City's favor for two reasons. First,

ORDER – 6

given the orders in *BLM*, Plaintiffs are already afforded substantial protection. Through *BLM*, the City is already subject to two injunction orders, the initial preliminary injunction and the clarification order following *BLM* plaintiffs' first contempt motion. *Black Lives Matter*, No. 2:20-cv-00887-RAJ (Dkt. ## 42, 110). Both orders are a result of the Court's balancing the equities and calibrating the need for constitutional protection and public safety. Dkt. # 25 at 6-7. Further, the Court has also entered two contempt orders, enforcing the preliminary injunction, holding the City to account, and clarifying what uses of crowd control weapons violate the injunction. *Black Lives Matter*, No. 2:20-cv-00887-RAJ (Dkt. ## 161, 189). As potential protestors, Plaintiffs already benefit from those rulings. Plaintiffs fail to justify why they deserve *additional* injunctive relief. That is, they fail to explain why their circumstances (which are the same as *BLM*) require the Court to take an existing and enforced preliminary injunction, abandon it, and supplant it with their proposed blanket prohibition.

      Plaintiffs' request for additional injunctive relief is even less persuasive now that this action and *BLM* are, in effect, identical. Initially, Plaintiffs claimed to be making an argument that the *BLM* plaintiffs were not. Dkt. # 1. According to their initial complaint, besides the First and Fourth Amendment, Plaintiffs were also suing the City on Equal Protection grounds. *Id.* The SPD's policy of using crowd control weapons on protestors, Plaintiffs alleged, amounted to an Equal Protection violation because it was a "de facto protest tax." Dkt. # 1 at 4, 17-18. They alleged that "individual protesters subjected to SPD's unabated and indiscriminate violence now must purchase cost-prohibitive gear to withstand munitions—even when peacefully protesting—as a condition to exercising their right to free speech and peaceable assembly." *Id.* at 4. Plaintiffs have since dropped that claim. As the City observes, their allegations now mirror those in *BLM*. Dkt. # 48 at 21.

      In short, Plaintiffs are already protected by the *BLM* injunction and contempt orders. They are seeking additional injunctive relief on the same (if not, less developed)

ORDER – 7

facts and theories as the *BLM* plaintiffs.  Yet Plaintiffs have not explained why they are entitled to additional relief when this Court has already crafted and enforced the preliminary injunction in *BLM*.

Second, judicial economy, docket management, and the avoidance of inconsistent rulings tip sharply in the City's favor.  As explained above, Plaintiffs' instant motion for preliminary injunction is predicated on the same four protests that were the subject of *BLM* plaintiffs' second contempt motion.  *See supra* Section II.A.[2]  After nearly three months, the Court resolved that motion.  *Id.*  To do so, the Court reviewed dozens of declarations, hours of video, and hundreds of pages of documents.  *Id.*  The Court conducted several status conferences and heard oral argument.  *Id.*  In the end, the Court issued two lengthy orders enforcing the injunction and imposing sanctions.  *Id.*  Addressing the same four protests—those that occurred on August 26, September 7, September 22, and September 23[3]—in this action would duplicate those efforts.  Perhaps more importantly, it would invite the Court to render inconsistent rulings.  In *BLM*, the Court already made several factual findings on a more robust record than the one here.  Examining those protests anew would only invite error.

Plaintiffs argue that the last two *Winter* prongs "always favor 'prevent[ing] the violation of a party's constitutional rights.'"  Dkt. # 31 at 12-15 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  They also argue that protestors must "cobbl[e] together resources" to protest "by way of a crowdsourced fundrais[ing] for

---

[2] The Court takes judicial notice of the *BLM* docket *sua sponte*.  Fed. R. Evid. 201(c)(1); *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER.").

[3] The only protest addressed here that was not covered in *BLM* is the September 26 protest.  Dkt. # 41.  For that protest, Plaintiffs rely on a single declaration from a protestor who claims to be hit in the head by a flash-bang grenade.  *Id.*  The declaration cites just one use of crowd control weapons and provides no context.  *Id.*  It is insufficient to justify the extraordinary relief Plaintiffs seek.

ORDER – 8

protective gear." *Id.* at 13. The first argument fails because, as explained above, the current preliminary injunction and contempt orders already safeguards their rights. The second argument fails because the speculative need for protective gear for some protestors is greatly outweighed by the real costs of duplicative and inconsistent litigation, especially given that Plaintiffs have abandoned their "de facto protest tax" claim.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "[*Winter*] requires the plaintiff to make a showing on all four prongs." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Proponents of a preliminary injunction bear the "heavy burden" of making a "clear showing" that they are entitled to such relief. *Ctr. for Competitive Pol. v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015), *abrogated on other grounds by Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021).

Plaintiffs fail to meet their burden. The last two *Winter* prongs tip sharply in the City's favor. Therefore, Plaintiffs do not make a "clear showing" that they are entitled to more injunctive relief than currently exists. Thus, the Court denies their motion for a preliminary injunction.

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction (Dkt. # 31) and **GRANTS** Plaintiffs' Motion to Amend Complaint (Dkt. # 42).

DATED this 1st day of September, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9